No. 22,581.

P. C. REILLY, *Plaintiff*, v. FRED W. KNAPP, as State Auditor, etc., *Defendant*.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of Chapter 1, Laws of 1919, Contains Two Subjects—Appropriations and Qualification for Offices—Section 2 of the Act is Unconstitutional and Invalid.* Chapter 1 of the Laws of 1919 contains two subjects: *first,* an act making appropriations for the executive and judicial departments of the state; *second,* an act to render certain persons ineligible to hold any office, place· or position referred to in the act, and relates to the qualifications for certain offices. The title of the act is broad enough to include both subjects. *Held,* that section 2, which attempts to fix the qualifications for certain offices, being part of a bill containing two subjects, violates section 16 of article 2 of the constitution, and is void.

2. SAME—*Exception to General Rule that Both Parts of a Double Bill Fall together, Recognized and Applied.* The general rule is, that where an act contains two separate and independent subjects having no connection with each other, and the title is broad enough to cover both, both portions of the act fall together and· are treated as void, because, generally, it is impossible for the court to choose between the two and hold one part valid and the other void, but where no such difficulty arises, and it is apparent, as in the present case, that the enactment of the provisions of section 2 furnished no inducement to pass the other part, and where a consideration of the entire chapter warrants the belief that the legislature would have passed the appropriation act alone, the rule does not apply, and it is held that the remainder of the act which relates to appropriations is valid.

Original proceeding in mandamus. Opinion filed November 8, 1919. Writ allowed.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the plaintiff.

*G. A. Spencer, A. R. Buzick, jr.,* and *Thomas N. Mulloy,* all of Salina, for the defendant.

The opinion of the court was delivered by

PORTER, J.: The plaintiff is a commission clerk in the office of the secretary of state and brings this action in mandamus to compel the state auditor to issue a warrant for his salary for the month of July, 1919.

The plaintiff has been holding the position for several years, and since the enactment of the civil-service law of 1915 his position has been in the classified service. In January, 1919, L. J. Pettijohn, secretary of state, appointed as assistant secretary of state, D. O. McCray, who is the father-in-law of the plaintiff. The auditor refused to issue the warrant for plaintiff's salary for July, 1919, upon the sole ground that D .O. McCray is assistant secretary of state and plaintiff's father-in-law, and that plaintiff is not entitled to the salary by reason of the provisions of section 2 of chapter 1 of the Laws of 1919. This act is one making appropriations for the executive and judicial departments for the years ending June 30, 1919, June 30, 1920, and June 30, 1921. The provision of section 2 of this act reads:

"No person shall be appointed to or employed in any office, place or position, in any of the executive or judicial branches of the state government, or under any commisssion, board or department, for which appropriations are herein made, who is related by blood or marriage to the head or heads, principal or chief of such office, board, commission, department, or executive or judicial branch, or who is related by blood or marriage to the chief assistant or secretary thereof."

The plaintiff insists that the law has no application to his case, for the reason that he was already holding the office long before his father-in-law's appointment to the place of assistant secretary. When he was appointed, he was not related by blood or marriage to anyone in the office of the secretary of state. It is also urged that it was not the intention of section 2 of chapter 1 of the Laws of 1919, either to prohibit the continuation of one already appointed or employed, or to create a vacancy in a position held by one already appointed or employed, merely because of the subsequent appointment of a relative of his to some position in the same department. The contention is, in other words, that the legislative prohibition relates to the time of the appointment and is prospective and not retroactive.

Reilly v. Knapp.

The plaintiff contends, too, that his rights to the office are governed by the provisions of the civil-service act of 1915, under which he was appointed, after taking the examination provided for under that act; that he belongs in the classified service; and that there is nothing in the appropriation act of 1919 to suggest the purpose of the legislature to do anything to defeat the general civil-service law, which itself contains exactly the same provision against the appointment by heads and chiefs of departments of their relatives by blood or marriage. While it may be said in passing that there is force in these contentions, the conclusion the court has reached upon the principal question, involving the val'dity of section 2 of the act of 1919, which is the main question presented by the plaintiff, renders it unnecessary to consider the other questions.

Does section 2 of the appropriation act of 1919 violate section 16 of article 2 of the constitution, which provides that "No bill shall contain more than one subject?" The title of the act is:

"An act making appropriations for the executive and judicial departments of the state for the fiscal years ending June 30, 1919, June 30, 1920, and June 30, 1921; *and fixing the salaries of certain officers, clerks and employees herein named; and providing for employment of additional help;* and requiring all fees collected by state officers to be paid into the state treasury for the benefit of the state, and rendering certain persons ineligible to hold any office, place or position herein referred to."

Certain parts of the title we have italicized for the purpose of calling attention to the fact that the title is much broader than the act, which neither fixes the salary of officers, nor provides for the employment of additional help. All of the act, except section 2, is a general appropriation act, and the title is sufficiently broad to include the provisions of section 2. Part of the title reads: "and rendering certain persons ineligible to hold any office, place or position herein referred to." The act, however, clearly contains more than one subject; first, an act making appropriations for the executive and judicial departments of the state for the next biennial period; second, an entirely different subject from that of appropriations, an attempt to render certain persons ineligible to hold any office, place or position referred to in the act. It seeks to establish qualifications for certain offices, which has nothing to do what-

ever with the subject of appropriations. The legislature might have provided, as a proper part of an appropriation bill, that no money appropriated by the act should be used to pay the salary or compenstion of any officer or employee related by blood or marriage to certain other officers; and this might have been done without making it a separate and distinct subject from that of appropriations; but there is no prohibition of that kind in section 2, which merely prescribes a qualification for appointees, which is, that they must not be related by blood or marriage, etc. The part of the act which consists of an appropriation act is to continue in force no longer than the biennial period, while section 2, which is a general law fixing the qualifications of certain officers, if valid, remains in full force and effect beyond the biennial period and until amended or repealed by a subsequent legislature. That there are two acts, each with a separate title, one to appropriate money, and one to establish the qualifications for certain offices, cannot be doubted. And this is in direct violation of the provision of the constitution which declares that no bill shall contain more than one subject.

It was not until 1911 that the practice began of attempting to include in the general appropriation act other subjects of legislation. Almost without exception the appropriation acts passed by previous legislatures were as "clean as a hound'n tooth," in the sense that they were free from objectionable legislation on extraneous subjects. The practice of incorporating other legislation in appropriation acts is by no means a modern thing; it is ancient, but it has been severely condemned on the ground that the general appropriation acts are absolutely necessary to enable the state government to perform its functions, and that because of this necessity, objectionable legislation is enabled to get upon the statute books by being attached to a good cause. The flood tide in this method of legislation may be said to have been reached in 1915. The extent of the load which the general appropriation bill of that year was compelled to carry in the form of riders embracing general legislation is indicated by the title, which reads:

"An act making appropriation for the executive and judicial departments of the state for the fiscal year ending June 30, 1916, and June 30, 1917, and deficiencies for the fiscal year ending June 30, 1915; and amending sections 483, 9010, 9015 and 9028 of the General Statutes of

Reilly v. Knapp.

Kansas of 1909; and amending section 3 of chapter 313 of the Laws of 1913; and amending section 8 of chapter 1 of the Laws of 1913; and amending section 1 of chapter 308 of the Laws of 1911; and amending section 1 of chapter 297 of the Laws of 1911; and amending section 4 of chapter 2 of the Laws of 1911; and amending section 1 of chapter 310 of the Laws of 1911; and repealing said original sections 483, 9010, 9015 and 9028 of the General Statutes of Kansas of 1909; and section 3 of chapter 313 of the Laws of 1913, and section 8 of chapter 1 of the Laws of 1913, and section 1 of chapter 308 of the Laws of 1911, and section 1 of chapter 297 of the Laws of 1911, and section 4 of chapter 2 of the Laws of 1911, and section 1 of chapter 310 of the Laws of 1911; and providing for an actuary and an inspector for the insurance department; and making appropriations to purchase additional land on Stiger's island for the Kansas State Penitentiary; and fixing the salaries of certain officers, clerks, and employees herein named; and providing for employment of additional help; and requiring all fees collected by state officers to be paid into the state treasury for the benefit of the state."

Among the matters included in the act was the repeal of a number of general laws; and the amendment of scores of other laws, such as the act creating a state board of medical registration and examination and imposing certain duties upon members of the board. It was not only a general appropriation act, but it was an act fixing the fees and salaries of hundreds of officers, and repealing former laws fixing those fees and salaries. It authorized the purchase of Stiger's island in Leavenworth county for the use of the penitentiary; it required the board of corrections, previous to the purchase, to cause an accurate survey of the island to be made under the direction of the public utilities commission. (This provision, or so-called "item," was vetoed by the governor.) (Laws 1915, p. 21.)

The absolute necessity that the general appropriation bill to pay the salaries of the executive and judicial departments of the state shall pass; the absolute certainty that, in some form, it will pass, explain why the method of attaching riders to the bill is made use of for the purpose of carrying through legislation which if left to itself, would fall of its own weight. The general appropriation bill is quite often necessarily kept in the committee until near the closing hours of the session, and the lack of opportunity for a full discussion of the merits of riders attached to it, and the urgent necessity of providing for appropriations, and of adjourning, supply a fertile soil for the

development of a character of legislation known as "log-rolling."

In the case of *The State, ex rel., v. Dawson,* 90 Kan. 839, 136 Pac. 320, it was said in the opinion: "The congressional practice of putting riders on appropriation bills is not permitted under our constitution." (p. 842.) In that case, however, the question passed upon was whether the title of chapter 2 of the Laws of 1911, which was an act making appropriations for the executive and judicial departments, was broad enough to embrace a provision requiring certain officers to account for and turn over fees collected by them, and it was held that the title was not broad enough, and that the act violated section 16 of article 2 of the constitution requiring the single subject of an act to be clearly expressed in its title. Following that decision, the legislature of 1913, in passing the appropriation act for the executive and judicial departments, provided for an additional employee in the state treasurer's office, and fixed the salaries of certain officers, clerks and employees named in the act, but the title to the act was made broad enough to include these matters.

It is probably true that the legislature may in an appropriation bill create a new office and fix the salary of the office. At least, there is a strong argument in favor of the proposition that the creation of a new office and the fixing of the salary is so intimately connected with and tied up to the question of appropriations that the two embrace but one subject, and that where the title is sufficiently broad, section 16 of article 2 is not violated by combining such provisions with a general appropriation act. If it be conceded that this may be done, the practice is one which should not be encouraged, because, manifestly, a bill creating an office and fixing the salary should stand on its own merits; and where the matter is included as part of an appropriation bill which must be passed in order to enable the state government to carry on, the question of creating a new office and fixing the salary of that office will not be given the consideration on its merits that it would receive if brought before the legislature in the form of a separate bill.

Because of the many evils resulting from this practice, some of the states provide in their constitution that an appropriation bill shall embrace nothing but appropriations. Thus, the

constitution of Illinois, adopted in 1870, provides that bills making appropriations for the pay of officers of the government "shall contain no provision on any other subject." (Art. IV, § 16.) Similar provisions are found in the constitutions of Alabama (Art. IV, § 71) ; Arkansas (Art. V, § 30) ; Colorado (Art. V, § 32) ; Florida (Art. III, § 30) ; Nebraska (Art. III, § 19) ; Pennsylvania (Art. III, § 15) ; West Virginia (Art. VI, § 42) ; and Mississippi (Art. IV, § 69, in which the provision is that "legislation shall not be engrafted on appropriation bills"). It might be argued that, since our constitution contains no express provision of this kind, the act in question is not violative of the constitution. But section 16 of article 2, if it means what it says—and we think it means exactly what it says—applies with all its force to a bill which contains two subjects differing as widely as that of general appropriations for the payment of officers of the state government, and qualifications of persons to hold office.

Chapter 1 of the Laws of 1919 includes two subjects, and both are included within the title. The result is two bills, and since one of these is void, the remaining question is, whether the one making appropriations for the executive and judicial departments of the state is also void. The general rule is, that where, in violation of a similar constitutional provision, an act embraces two subjects, each of which is complete in itself, both portions of the act fall together. In *The State v. Barrett*, 27 Kan. 213, the question came before this court for the first time, and Justice Valentine, speaking for the court, said:

"Where an act contains two separate and independent subjects having no connection with each other, and the title to the act is broad enough to cover both, whether such an act or any portion of it has any validity has not yet been settled or determined by this court; but we think that probably and as a general rule it has not." (p. 218.)

And it was so ruled in the syllabus. (Syl. ¶ 10.) (See cases cited in the opinion, and, also, 36 Cyc. 1034.)

The general rule is stated in Cooley's Constitutional Limitations, 5th ed., page 178, as follows:

"But if the title to the act actually indicates, and the act itself actually embraces, two distinct objects, when the constitution says it shall embrace but one, the whole act must be treated as void, *from the manifest impossibility in the court choosing between the two, and holding the act valid as to the one and void as to the other.*" (Italics ours.)

Clearly, however, we have no such difficulty here. The most important thing for which the legislature is convened is to make appropriations for the executive and judicial branches of the government. It would be the height of absurdity to contend that the enactment of the "blood and marriage" provision was designed as an inducement to pass the appropriation act, or that a consideration of the entire chapter warrants the belief that the legislature would not have passed the appropriation act alone. In the briefs in the present case no such contention is made. If the legislature had adjourned without passing an appropriation act it would have been called together in special session immediately. Without the appropriations the state could not carry on its functions; and the legislature was well aware of this fact, and it was also aware of the fact that a "blood and marriage" provision, in almost identical language, was already in full force and effect under the civil-service act of 1915.

There are but few exceptions, however, to the general rule as stated by Mr. Cooley. The only case we have found is *State v. Lancaster County,* decided by the Nebraska court in 1885. The opinion, after quoting the general rule from Cooley's Constitutional Limitations, *supra,* uses this language:

"But this rule will apply only in those cases where it is impossible from an inspection of the act itself to determine which act or rather which part of the act is void and which valid. Where this can be done the rule does not apply, unless it shall appear that the invalid port'on was designed as an inducement to pass the valid, so that the whole taken together will warrant the belief that the legislature would not have passed the valid part alone. The valid portion of the act in the case under consideration is separate and distinct from that which is invalid, and it is very clear that the invalid portion did not have and could not have had the effect to induce the legislature to pass the amendment in question, and therefore the amended act is valid." (*State v. Lancaster County,* 17 Neb. 85, 87.)

The Nebraska case involved a statute affecting the sale of school lands. It is not nearly so strong a case for upholding the exception to the general rule as the case at bar, where, as we have remarked, there can be no doubt that the legislature would have passed the general appropriation act for the payment of the salaries of the executive and judicial branches of the government if it had realized that the portion of the act

establishing the qualifications of officers could not be combined in the same act.

For the reasons stated, we hold that chapter 1 of the Laws of 1919 contains two subjects, both of which are clearly expressed in the title, and the chapter contains two acts; that section 2, which relates to the subject of the qualifications of persons to hold certain offices, is void, and the remainder of the act, which relates to appropriations, is valid.

It follows that the plaintiff is entitled to judgment, and that the peremptory writ will be allowed.

