[No. 31825. *En Banc.* August 20, 1951.]

POWER, INC., *Respondent,* v. E. C. HUNTLEY *et al., Appellants.*

NORTHERN PACIFIC RAILWAY COMPANY, *Respondent,* v. THE STATE OF WASHINGTON *et al., Appellants.*

GREAT NORTHERN RAILWAY COMPANY, *Respondent,* v. THE STATE OF WASHINGTON *et al., Appellants.*

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, *Respondent,* v. THE STATE OF WASHINGTON *et al., Appellants.*

UNION PACIFIC RAILROAD COMPANY, *Respondent,* v. THE STATE OF WASHINGTON *et al., Appellants.*[1]

[1]Reported in 235 P. (2d) 173.

*The Attorney General* and *Lyle L. Iversen, Assistant,* for appellants.

*E. W. Anderson, pro se.*

*McMicken, Rupp & Schweppe* and *John N. Rupp,* for respondent Powers, Inc.

*B. E. Lutterman, Chas. F. Hanson, Thomas Balmer, R. Paul Tjossem, Dean H. Eastman, Harold G. Boggs,* and *Skeel, McKelvy, Henke, Evenson & Uhlman,* for respondent railroad companies.

HILL, J.—Laws of 1951, Extraordinary Session, chapter 10, having passed the Senate April 3, 1951, and the House April 4, 1951, was approved by the governor April 16, 1951, with

the exception of certain items which were vetoed. The title of the act is as follows:

"An Act providing for the support of the state government, making appropriations for salaries, operations, maintenance and other expenses of state institutions, departments and offices, for the purchase, condemnation and improvement of land, the construction of buildings and improvements for the various state institutions designated and mentioned, and for emergencies, and for refunds, and for the relief of certain individuals, corporations, counties and municipalities, and for transfers, and for deficiencies, and for appropriation of revolving funds, and for sundry civil expenses of the state government, and for public assistance, and for purposes specified in certain acts of congress, and for miscellaneous purposes, for the fiscal biennium beginning April 1, 1951, and ending March 31, 1953, except as otherwise provided, imposing an excise tax upon corporations, prescribing penalties, and declaring that certain parts of this act shall take effect immediately, and that certain other parts shall take effect May 1, 1951."

This act will be referred to throughout this opinion as chapter 10.

The act is divided into two parts. The first two sections deal with appropriations. The third section reads:

"The remaining sections of this act shall constitute a new chapter under title 82, R. C. W., and shall be headed '*Corporation Excise Tax.*'"

And all of the sections thereafter, through § 44, deal with a tax on the net incomes of corporations. Section 7 reads in part as follows:

". . . (a) *Tax on Corporations and Certain Banks.* Every bank and corporation other than a federal savings and loan association or national banking association, *for the privilege of exercising its corporate franchise in this state or for the privilege of doing business in this state,* shall annually pay to the state, in addition to annual license fees, an excise tax according to, or measured by, its net income equal to four per cent of such net income for the preceding calendar year or fiscal year computed and allocated to this state in the manner hereinafter provided. . . ." (Italics ours.)

The forty-fifth and final section states that the act is necessary for the support of the state government, and provides that the first two sections shall take effect immediately and the remaining sections May 1, 1951.

The above named respondents, as plaintiffs in the trial court, made numerous attacks on the constitutionality of chapter 10.

The trial court contented itself with holding that §§ 3 to 44, both inclusive, of chapter 10, purport to impose a tax upon the property of the respondents and other corporations, which tax is not imposed upon the property of either partnerships or individuals engaged in the same businesses, and for that reason is discriminatory and violates the fourteenth amendment to the state constitution. Art. VII, § 1, as amended. The trial court restrained the enforcement of §§ 3 to 44, inclusive.

With this holding of the trial court, we are in accord. It is no longer subject to question in this court that income is property. Art. VII, § 1, of our state constitution, as amended in 1930 (see amendment 14), provides that ". . . The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. . . ." As said in *Culliton v. Chase*, 174 Wash. 363, 374, 376, 25 P. (2d) 81:

"It would certainly defy the ingenuity of the most profound lexicographer to formulate a more comprehensive definition of 'property.' It is 'everything, whether *tangible or intangible*, subject to ownership.' Income is either property under our fourteenth amendment, or no one owns it. If that is true, any one can use our incomes who has the power to seize or obtain them by foul means. There being no other classifications in our constitution but real and personal property and *intangible* property, incomes necessarily fall within the category of intangible property. No more positive, precise and compelling language could have been used than was used in those words of our fourteenth amendment. It needs no technical construction to tell what those words mean. The overwhelming weight of judicial authority is that 'income' is property and a tax upon income is a tax upon property. . . .

"It has been definitely decided in this state that an income tax is a property tax, which should set the question at rest here. *Aberdeen Savings & Loan Assn. v. Chase,* 157 Wash. 351, 289 Pac. 536, 71 A. L. R. 232."

The same section of the constitution provides:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. . . ." Art. VII, § 1, as amended in 1930 (see amendment 14.)

If the four per cent tax on corporate net incomes is a tax on property, it violates the principle of uniformity in that it levies no tax on the incomes of individuals and copartnerships which may be in competition with corporations required to pay the tax. See *Aberdeen Savings & Loan Ass'n v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *Burr, Conrad & Broom, Inc., v. Chase,* 157 Wash. 393, 289 Pac. 551; *Culliton v. Chase, supra; Petroleum Nav. Co. v. Henneford,* 185 Wash. 495, 55 P. (2d) 1056.

Appellants urge that this is not a tax on property, but that it is an excise tax on every corporation ". . . for the privilege of exercising its corporate franchise in this state or for the privilege of doing business in this state," and that, as an excise tax, it is not subject to the constitutional requirement of uniformity.

The legislature has labeled the tax in question a corporate excise tax. Appellants, in all honesty, concede that a tax is not necessarily an excise tax because the legislature has so labeled it, and they say on p. 36 of their brief:

"The validity of the corporate tax depends upon whether the tax is, in fact, an excise or privilege tax, or a mere property tax masquerading as an excise."

We dealt with a similar question in *Jensen v. Henneford,* 185 Wash. 209, 53 P. (2d) 607, when the 1935 legislature had provided for a three per cent tax on net incomes of all residents in the state, with a surtax of four per cent on all net incomes in excess of $4,000, which tax, the legislature had declared, was "for the privilege of receiving income . . . while enjoying the protection of its [the state of Washing-

ton's] laws." Answering the contention that that was an excise tax and not subject to the rule of uniformity, this court said (p. 217):

"It is true that the legislature has so labeled the 1935 act. But the legislative body cannot change the real nature and purpose of an act by giving it a different title or by declaring its nature and purpose to be otherwise, any more than a man can transform his character by changing his attire or assuming a different name. The legislature may declare its intended purpose in an act, but it is for the courts to declare the nature and effect of the act. The character of a tax is determined by its incidents, not by its name. *Aberdeen Savings & Loan Ass'n v. Chase*, 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *Culliton v. Chase*, 174 Wash. 363, 25 P. (2d) 81; *Dawson v. Kentucky Distilleries. & Warehouse Co.*, 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; *Macallen Co. v. Massachusetts*, 279 U. S. 620, 49 S. Ct. 432, 73 L. Ed. 870, 65 A. L. R. 866; *Educational Films Corp. v. Ward*, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 42, 71 A. L. R. 1226; *Stewart Dry Goods Co. v. Lewis*, 294 U. S. 550, 55 S. Ct. 525, 79 L. Ed. 539."

A study of the Laws of 1935, chapter 180, §§ 159 to 210, both inclusive, another four per cent tax on corporate net incomes, declared unconstitutional in *Petroleum Nav. Co. v. Henneford, supra*, reveals many parallels. That tax, too, was to be levied, as by § 7 here, against practically every corporation, ". . . for the privilege of exercising its corporate franchise in this state or for the privilege of doing business in this state. . . ." Laws of 1935, chapter 180, § 161. We there said, "The determinative question is whether the tax imposed is an excise or a property tax." We concluded that it was a property tax, and that the property of corporations may not be subjected to a tax that is not imposed upon the property of copartners and individuals.

We have no hesitancy in saying that an analysis of the present act convinces us that the tax is a mere property tax "masquerading as an excise." It is geared throughout to the Federal income tax legislation as it relates to corporations. It has no reference to income from the various business activities on which the business and occupation

tax, a true excise tax, is based, but taxes almost any income from almost every source. After studying this act in its entirety, we conclude that the tax is levied because the corporation has net income, not because it does any business in this state or exercises its corporate franchise; conversely, if it has done a million dollars worth of business in this state but has no net income, it would not be subject to taxation under this act.

We recognize the right to levy an excise tax on the privilege of doing business or exercising corporate franchises and to base that tax on income; but the tax must be, "in truth, levied for the exercise of a substantive privilege granted or permitted by the state." *Jensen v. Henneford, supra.*

What we have said heretofore is in support of the ruling of the trial court, which we affirm. But there is still another reason why the so-called "corporation excise tax" must of necessity be held to be unconstitutional, even if it were, in truth, an excise tax.

Art. I, § 12, of our state constitution reads as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Chapter 10, § 38, subd. (h), allows a credit on the tax payable for any fiscal year under this act, of fifty per cent of the amount of the business and occupation tax paid for such fiscal year. By the definition contained in § 5, subd. (a) (6), a fiscal year is "an accounting period of twelve months ending on the last day of *any month other than December.*" (Italics ours.) It is clear that this credit is a special privilege granted to corporations doing business on a fiscal year basis and denied to those doing business on a calendar year basis. That such a classification is arbitrary, and that the result is a violation of Art. I, § 12, is likewise clear. *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101; *State v. Inland Empire Refineries, Inc.,* 3 Wn. (2d) 651, 101 P. (2d) 975; *Texas Co. v. Cohn,* 8 Wn. (2d) 360, 112 P. (2d) 522.

Another constitutional question is raised which must be determined here, and that is whether the entire act is unconstitutional because it violates Art. II, § 19, of our state constitution, which reads: "No bill shall embrace more than one subject, and that is to be expressed in the title."

This provision contains two prohibitions: (1) No bill shall embrace more than one subject (the purpose of which is to avoid hodgepodge and "logrolling" legislation); and (2) no bill shall have a subject which is not expressed in the title (the purpose of which is to notify the members of the legislature and the public of the subject matter of the proposed legislation).

We have in some cases dealing with the second prohibition declared unconstitutional so much of the act as dealt with subjects not covered by the title, and upheld that portion of the act the subject of which was expressed in the title. In those cases it was said that the purpose of the title is to inform the members of the legislature and the public as to the subject of the proposed legislation, and that any subject matter not covered by the title may be stricken from the act without affecting those matters covered by the title unless they are inextricably intertwined.

In the present case, which falls within the first prohibition, i.e., no bill shall embrace more than one subject, the title tells the legislature and the public what the subject matter of the legislation is and makes it clear that it is dual in character, and in such a case we cannot see on what basis it can be said that one subject and not the other represents the legislative purpose.

We have here a situation in which neither the appropriation bill, §§ 1 and 2, nor the corporation income tax bill, §§ 3 to 44, standing on its own merits, could pass the legislature in the special session, but when the proponents of these measures combined their interests, both were enacted into Laws of 1951, Ex. Ses., chapter 10. (Whether or not the corporation income tax is unconstitutional for some other reason is not material to our consideration of whether chapter 10, taken as a whole, violates Art. II, § 19, of the

constitution.) This is the clearest possible illustration of the kind of "logrolling," the "you-scratch-my-back-and-I'll scratch-yours" situation that the constitutional provision was designed to prevent.

In the case of *Commonwealth v. Barnett*, 199 Pa. 161, 48 Atl. 976, the supreme court of that state clearly stated the evils that prevailed prior to the adoption of such a constitutional provision, saying, in reference to legislative bills containing different subjects:

" . . . Such bills, popularly called 'omnibus' bills, became a crying evil, not only from the confusion and distraction of the legislative mind by the jumbling together of incongruous subjects, but still more by the facility they afforded to corrupt combinations of minorities with different interests to force the passage of bills with provisions which could never succeed if they stood on their separate merits. So common was this practice that it got a popular name, universally understood as log rolling. A still more objectional practice grew up of putting what is known as a 'rider,' that is a new and unrelated enactment or provision on the appropriation bills, and thus coercing the executive to approve obnoxious legislation or bring the wheels of the government to a stop for want of funds."

Judge Cooley, speaking for the Michigan supreme court in *People ex rel. Drake v. Mahaney*, 13 Mich. 481, 494, said:

" . . . The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state."

▪ The appellants urge, however, that the appropriations portion of the act can be upheld even if there are two subjects in the title and in the act.

The distinction between cases where an act contains provisions that are not covered by the title and where the title itself contains more than one subject, is well expressed in *Public Service Co. v. Recktenwald*, 290 Ill. 314, 318, 125 N. E. 271:

"The constitutional provision that no act shall embrace more than one subject, which shall be expressed in the title, prohibits the passage of an act containing provisions not fairly embraced in the title and any such provisions are void, and it also prohibits the passage of an act relating to different subjects expressed in the title, in which case the whole act is void."

The cases generally support the statement from 1 Cooley on Constitutional Limitatitons (8th ed.) 308:

"But if the title to the act actually indicates, and the act itself actually embraces, two distinct objects, when the constitution says it shall embrace but one, the whole act must be treated as void, from the manifest impossibility in the court choosing between the two, and holding the act valid as to the one and void as to the other."

As the supreme court of Pennsylvania said in *Yardley Mills Co., Inc., v. Bogardus*, 321 Pa. 581, 185 Atl. 218, it is impossible to select arbitrarily one of several unrelated subjects included in the title and say that it is constitutional to the exclusion of the others.

Particular attention is directed to *Jackson v. State ex rel. South Bend Motor Bus Co.*, 194 Ind. 248, 258, 142 N. E. 423, where it was said:

"It is contended, on behalf of appellants, that even if the act in question does contain two unrelated subjects, yet the court may determine that one of those subjects can stand and the other be held as void, the contention being, that the part of the act relating to motor vehicles should be allowed to stand as valid, and the part relating to inheritance taxes treated as void. This is not permissible where the act, both in its title and in the body, treats of two different subjects. An act of such a character is absolutely void, because it is in direct conflict with the Constitution.

"The Constitution does provide that if only one subject is embraced in the title, then any subject not expressed in the title that is embraced in the body of the act, may be rejected, and the part that is expressed in the title be allowed to stand; but that is not the case here, both subjects being in the title and the body. In such a case the courts cannot choose between the two subjects and eliminate one of them. . . .

"The rule, that the whole act is void if both the title and the body of the act embrace two unrelated subjects, is sustained by the following additional authorities: 1 Sutherland, Statutory Construction, § 144; *Oxnard Beet Sugar Co. v. State, supra,* [73 Neb. 57, 102 N. W. 80, 105 N. W. 716]; *Sutter v. People's Gas Light Co., supra,* [284 Ill. 634, 120 N. E. 562]; *Skinner v. Wilhelm* (1886), 63 Mich. 568, 30 N. W. 311; *Cote v. Village of Highland Park, supra* [173 Mich. 201, 139 N. W. 69]; *Builders', etc., Co. v. Lucas & Co.* (1898), 119 Ala. 202, 24 So. 416; *State v. Ferguson* (1900), 104 La. 249, 28 So. 917, 81 Am. St. 123; *Simms v. Sawyers, supra* [ 85 W. Va. 245, 101 S. E. 467]; 25 R. C. L. 836, and cases cited."

The Indiana court continued (p. 260):

"To support his contention that the subjects of this act may be separated by the court and one subject be allowed to stand and one stricken out, the attorney-general cites two cases, namely, *Reilly v. Knapp* (1919), 105 Kans. 565, 185 Pac. 47, and *State v. Lancaster County* (1885), 17 Nebr. 85, 22 N. W. 228. . . .

"These are the only two cases found which can in any way be claimed as supporting the contention made that we can separate this act and hold one part valid and the other invalid.

"The unanimous holding of all the authorities, unless the two cases above referred to can be classed as exceptions, is, where the act contains two separate subjects, in both the title and body, it cannot be separated by the courts."

Conceding that the exceptions may be somewhat more numerous than indicated by the Indiana case just quoted, the seeming departures from the rule are usually based either on a holding that the constitutional provision is directory and not mandatory or the court's claimed ability to discern what the legislature would have done if the two subjects had been before it on their individual merits. We have found no case where, with a comparable legislative history, both measures having failed of passage when standing on their own merits but having passed the legislature when tied together (a "United we stand; divided we fall" proposition), any court has been willing to say that one should stand and the other fall.

Another frequently cited case stating the majority rule is *Simms v. Sawyers*, 85 W. Va. 245, 255, 101 S. E. 467, where the court said:

"Having come to the conclusion that the constitutional provision invoked here is mandatory, and that the act in question violates that provision, can any of the provisions of this act stand? It will be noticed that both of the subjects of legislation covered by the act are included within its title. If the title only embraced one particular subject of legislation and the act was broader than the title, including an additional subject, under the constitutional provision invoked, so much of the act as was not covered by the title would be void, and that part of it included within the title would be valid, but where the title includes both subjects of legislation embraced in the act, the whole act must fall for the very sufficient reason that it is improper for the Court to choose between the two."

Appellants rely upon *Gruen v. State Tax Commission*, 35 Wn. (2d) 1, 211 P. (2d) 651, in which we upheld a title which read:

"An Act providing for the payment of a bonus to veterans of World War II from the proceeds of a bond issue repayable from the excise taxes on cigarettes as herein provided for; making an appropriation and providing penalties."

The question as to title discussed in that case was whether the title was broad enough to cover the subject matter of the act, not whether there were two unrelated subjects in the title. Those who were opposing the validity of the statute then in question took the position that a debt within the constitutional debt limitation was created by the bonds issued thereunder; and the constitution provides that when a debt is created under Art. VIII, § 3, of the constitution, the law creating it shall provide ways and means for payment of interest and discharge of the principal. There is an obvious, though somewhat generally disregarded, connection between a debt and the means of paying it, and the two subjects in such a case are not distinct but properly related.

It is suggested but not strongly urged by the appellants that the severability clause, chapter 10, § 42, would permit

the entire tax measure to be severed if it be held that there are two unrelated subjects in the title and in the act.

 If the court cannot choose between two unrelated subjects and eliminate one of them when Art. II, § 19, is violated, a severability clause cannot enable it to make such a choice. The only plausible argument that could be made as to the effect of the severability clause would be on another phase of the case, *i.e.*, that § 38, subd. (h), might be severed and the rest of the socalled corporate excise tax be upheld. That argument meets a stone wall in *Jensen v. Henneford*, 185 Wash. 209, 53 P. (2d) 607, and *State v. Inland Empire Refineries, Inc.*, 3 Wn. (2d) 651, 101 P. (2d) 975.

Finally, it is urged upon us that to declare the appropriations act unconstitutional would throw the fiscal affairs of the state into chaos.

In the debate on substitute house bill No. 1, which became chapter 10, both houses of the legislature were informed that their course in joining the appropriations bill and the so-called corporate excise tax into one bill was fraught with danger, and that, if enacted, it would be a violation of Art. II, § 19, of the constitution. They chose to disregard that warning.

The West Virginia court, in the case of *Simms v. Sawyers, supra*, used a quotation from Shakespeare (Merchant of Venice, act IV, scene 1) to answer the argument of subsequent financial chaos, saying that if it were to avoid its clear duty because of a claimed expediency,

" ' 'Twill be recorded for a precedent,
And many an error, by the same example,
Will rush into the State: it cannot be.' "

 It is our view that chapter 10 of the Laws of 1951, Ex. Ses., contains two unrelated subjects in the title and in the act, and is unconstitutional and void in its entirety.

Respondents assert that chapter 10 is unconstitutional for the further reason that the legislature flagrantly violated Art. II, § 38, of the constitution, which reads as follows:

"No amendment to any bill shall be allowed which shall change the scope and object of the bill."

Appellants do not deny that this constitutional provision was violated. Their position, briefly stated, is: "So what? There isn't anything the court can do about it because, under its repeated decisions, there is no way it can know what happened."

That is the position always taken in argument when a question (not now before us) is raised concerning the validity of legislation enacted in a regular session after the sixtieth day. Art. II, § 12. It may or may not be, as argued, that the limitations of Art. II, §§ 12 and 38, are binding only upon the legislative conscience, and that the courts must perpetually remain in ignorance of what everybody else in the state knows. We refrain from any consideration of this further constitutional question urged upon us by the respondents, and of the "So what" answer of the appellants, as being unnecessary to the disposition of the present appeal.

Summarizing, we hold:

(1) The so-called "corporate excise tax" is in truth and fact not an excise tax but a tax on property, *i.e.*, income, and, as the property of corporations may not be subjected to a tax not imposed upon the property of competing copartners and individuals, it violates the uniformity provision of our state constitution. Art. VII, § 1, as amended in 1930 (amendment 14).

(2) In the light of the definition of what constitutes a fiscal year, § 38, subd. (h) makes the corporate income tax provided by chapter 10 discriminatory against corporations doing business on a calendar year basis, and it is therefore unconstitutional. Art. I, § 12, state constitution.

(3) Chapter 10 contains two unrelated subjects in the title and in the act and violates the constitutional provision that no bill shall embrace more than one subject. Art. II, § 19.

(3-a) When an act contains two unrelated subjects in the title and in the act, the whole act is void, as the court cannot choose between the two.

We affirm the judgments of the trial court enjoining the enforcement of the Laws of 1951, Extraordinary Session,

chapter 10, §§ 3 to 44, inclusive, and hold that chapter 10 is unconstitutional in its entirety.

SCHWELLENBACH, C. J., HAMLEY, DONWORTH, and WEAVER, JJ., concur.

SCHWELLENBACH, C. J. (concurring specially)—I have signed the majority opinion, but in fairness to all concerned it should be stated that after this case had been assigned to one of the judges, and his opinion did not meet with the approval of a majority, the case was then reassigned to Judge Hill for opinion.

BEALS, J. (dissenting in part and concurring in part)—I concur with the majority in holding that the trial court correctly ruled that §§ 3 to 44, inclusive, of chapter 10, Laws of 1951, Ex. Ses., which purport to impose a tax upon corporations are unconstitutional and void, but dissent from that portion of the majority opinion which holds that §§ 1 and 2 of the act, the appropriations bill, are also unconstitutional and void.

I agree with the majority that chapter 10, Laws of 1951, Ex. Ses., as enacted, purported to embrace two subjects and *prima facie* violated Art. II, § 19, of the state constitution. While it is true that both subjects of the act are for the benefit of the state, the two portions of the bill approach the matter from entirely different angles, the first by making necessary appropriations from the state treasury, and the second by raising money to assist in meeting the appropriations. However, the mere fact that legislative acts must be passed for each of these purposes afforded no sufficient ground for uniting the two measures in the same legislative act.

I do not agree with the majority that chapter 10, Laws of 1951, Ex. Ses., should be held void *in toto* because the act contains two subjects, but, on the contrary, it is my opinion that §§ 1 and 2 of the act, consisting of the appropriations, should be held valid, and the taxing portion of the act void.

The majority state that:

"We have here a situation in which neither the appropriation bill, §§ 1 and 2, nor the corporation income tax bill, §§ 3 to 44, standing on its own merits, could pass the legislature in the special session, but when the proponents of these measures combined their interests, both were enacted into Laws of 1951, Ex. Ses., chapter 10."

Nothing in the record before us discloses a sufficient foundation for the foregoing statement. It appears from the record before us that house bill No. 1, relating to appropriations, was referred to a free conference committee (composed of members of the House and Senate appropriations committees) pursuant to joint legislative rules. This is not an uncommon or at all unusual practice in legislative procedure. The free conference committee reported by recommending the passage of a bill which combined, but made some reductions in, the provisions of *two* appropriations bills that had been introduced, and added the provisions of house bill No. 14, which related to the taxation of corporate incomes. The bill recommended by the free conference committee was adopted by the legislature, approved by the governor, and became chapter 10, Laws of 1951, Ex. Ses.

To summarize—it appears from the record that two bills (house bills Nos. 1 and 2), which together constituted a complete appropriations bill, were introduced in and passed by the house (with certain minor amendments) during the special session of the legislature, both bills being then transmitted to the senate. The record further indicates that house bill No. 1 only was acted upon by the senate and failed to pass, whereupon it was referred to a free conference committee. The record does not disclose that the legislature as a whole ever took any action upon a complete appropriations bill until it accepted the recommendation of the free conference committee.

Therefore, if we are to indulge in speculation, we may as well assume that house bill No. 1 failed of passage because it did not constitute a complete appropriations bill, as to adopt the theory of the majority that a complete appropri-

ations bill, such as §§ 1 and 2 of the act in question, could not be passed, inasmuch as no such bill was presented until the free conference committee reported.

I find nothing in the record before us nor am I aware of any facts which would support the statement that judicial notice should be taken of the fact that no appropriations bill could be passed by the legislature unless §§ 3 to 44, inclusive, of the act as passed, were combined with the appropriations.

The legislature was required to enact an appropriations bill for the continued operation of the state government. Such an appropriations bill had been enacted during the regular session but was vetoed by the governor. The total amount appropriated by the bill passed in the regular session somewhat exceeded the amount appropriated by the act here in question.

Sections 3 to 44, inclusive, providing for the imposition and collection of a tax on corporations are and were unconstitutional and void *ab initio*. Their enactment by the legislature was a mere nullity.

The two portions of the act are clearly severable, even assuming that it was necessary to raise more money by some new method of taxation, and I see no reason for believing or even imagining that the enactment of §§ 1 and 2, the appropriations bill, was the result of logrolling or any improper legislative procedure, or that §§ 1 and 2 would not have been passed as a separate act.

The following authorities support my contention that §§ 1 and 2 of the act, constituting the appropriations bill, are not unconstitutional:

In *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, in which the defendant (appellant) was prosecuted and convicted of violation of Laws of 1907, chapter 139, p. 266, referred to as "the commission merchants' law," the appellant urged that the law was unconstitutional because of other provisions thereof which were not the basis of the action. In the course of the opinion, the court said:

"But that a law may be valid in part and separable and capable of being executed, so that the invalid part may be disregarded, is a well settled principle of statutory construction. Lewis' Sutherland, Statutory Construction, 578, 579; Cooley, Constitutional Limitations (7th ed.), 246, 247; *Pullman State Bank v. Manring*, 18 Wash. 250, 51 Pac. 464; *Supervisors v. Stanley*, 105 U. S. 305.

"The provisions in some sections of the act, for imprisonment for debt and for recovery of attorney's fees in suits upon the bonds provided for in the act, are matters not involved in this prosecution, and with which the appellant has no concern. We may well assume that the legislature would have enacted the body of the act providing for licensing and regulation of commission merchants regardless of the provisions for recovery of attorney's fees in civil actions upon the bonds and for prosecution and punishment for violation of *any* of the sections of the act. We, therefore, hold that, as to those sections, whether they are or are not unconstitutional and void, the provisions, so far as involved in this prosecution, are entirely independent and separable therefrom; and if said sections should be determined to be unconstitutional and void, such determination and the elimination of such provisions would not affect the remainder of the act."

In *Swedish Hospital v. Department of Labor & Industries,* 26 Wn. (2d) 819, 176 P. (2d) 429, this court, sitting *En Banc,* held that Laws of 1945, chapter 89, p. 243, was unconstitutional and void because a certain portion thereof was not expressed in the title. The act had no saving clause, and the court could not presume that the legislature would have enacted the bill had it not included the very important portion which the court held unconstitutional. In the course of the opinion, the court quoted the following:

"It is said in 11 Am. Jur. 857, § 162:

" 'In accordance with the general principles governing the severability of statutes already discussed, where the title of an act is insufficient, the rule is that the matters in the body of the statute not embraced are invalid, but the remainder of the act is not unconstitutional unless the parts are inextricably interwoven in the texture of the statute.'

"Among the general principles referred to in the above text, we quote the following from 11 Am. Jur. 842, § 155:

" 'The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional.' "

In *Reilly v. Knapp,* 105 Kan. 565, 185 Pac. 47, the supreme court considered an original proceeding in mandamus, the plaintiff, a state employee, seeking to compel the state auditor to issue a warrant for his salary for July, 1919. The auditor contended that the plaintiff was ineligible for state employment for reasons stated and not entitled to the salary demanded, by reason of the provisions of § 2, chapter 1, Laws of 1919. This act was the general appropriations act of 1919, the title reading as follows:

"An act making appropriations for the executive and judicial departments of the state for the fiscal years ending June 30, 1919, June 30, 1920, and June 30, 1921; and fixing the salaries of certain officers, clerks and employees herein named; and providing for employment of additional help; and requiring all fees collected by state officers to be paid into the state treasury for the benefit of the state, and rendering certain persons ineligible to hold any office, place or position herein referred to."

The court called attention to the fact that the title was much broader than the act, which was simply a general appropriations act and neither fixed salaries nor provided for the employment of additional help. Section 2 of the act read as follows:

"No person shall be appointed to or employed in any office, place or position, in any of the executive or judicial branches of the state government, or under any commission, board or department, for which appropriations are herein made, who is related by blood or marriage to the head or heads, principal or chief of such office, board, commission, department, or executive or judicial branch, or who is related by blood or marriage to the chief assistant or secretary thereof."

The court observed that the entire act, with the exception of § 2, provided for appropriations, and held that, because of the inclusion of § 2, the act contained more than one subject,

" . . . first, an act making appropriations for the executive and judicial departments of the state for the next biennial period; second, an entirely different subject from that of the appropriations, an attempt to render certain persons ineligible to hold any office, place or position referred to in the act. It seeks to establish qualifications for certain offices, which has nothing to do whatever with the subject of appropriations."

In the course of the opinion, after quoting from Cooley's Constitutional Limitations (5th ed.) p. 178, the court said:

"The most important thing for which the legislature is convened is to make appropriations for the executive and judicial branches of the government. . . . Without the appropriations the state could not carry on its functions; and the legislature was well aware of this fact."

The opinion concludes:

"For the reasons stated, we hold that chapter 1 of the Laws of 1919 contains two subjects, both of which are clearly expressed in the title, and the chapter contains two acts; that section 2, which relates to the subject of the qualifications of persons to hold certain offices, is void, and the remainder of the act, which relates to appropriations, is valid."

In the later case of *Cashin v. State Highway Commission*, 137 Kan. 744, 22 P. (2d) 939, the court considered Laws of 1931, chapter 80, the title of which read as follows:

"An act relating to motor vehicles, providing for licensing motor-vehicle operators and chauffeurs, defining the liability of certain persons for negligence in the operation of motor vehicles on the public highways, and to make uniform the law relating thereto."

The court held that the title clearly expressed two subjects, "the licensing of operators and chauffeurs of motor vehicles, and defining the liability of certain persons for negligence." The court stated that every section of the statute save § 23 was related and germane to the licensing

of motor vehicle operators and chauffeurs. Section 23 read as follows:

"This state and every county, city, municipal or other public corporation within this state, employing any operator or chauffeur, shall be jointly and severally liable with such operator or chauffeur for any damages caused by the negligence of the latter while driving a motor vehicle upon a highway in the course of his employment: *Provided,* This section shall not apply to boards of education, fire or police departments."

The court, citing its previous decision in *Reilly v. Knapp, supra,* and after stating the history of the act then under consideration, held that § 23, *supra,* was "unconstitutional and void and that such ruling is not to affect the validity of the remainder of the act."

The majority opinion quotes from 1 Cooley's Constitutional Limitations (8th ed.) 308. However, it should be noted that on p. 359 of the same volume, the learned author continues:

"*Statutes Unconstitutional in Part.* It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others, standing by themselves, would be unobjectionable. So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished by it, but insufficient for others. In any such case the portion which conflicts with the constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder. A statute, it has been said, is judicially held to be unconstitutional, because it is not within the scope of legislative authority; it may either propose to accomplish something prohibited by the constitution, or to accomplish some lawful, and even laudable object, by means repugnant to the Constitution of the United States or of the State. A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent

with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other."

The text last quoted is here in point and, in my opinion, should be applied to the situation presented in the case at bar.

The majority cite the Pennsylvania case of *Yardley Mills Co. v. Bogardus,* 321 Pa. 581, 185 Atl. 218, in which, as stated by the majority, it was held that "it is impossible to select arbitrarily one of several unrelated subjects included in the title and say that it is constitutional to the exclusion of the others." That case is not in point here, as, if this court should hold §§ 1 and 2 of the act constitutional, it could not be said that this was an "arbitrary" holding, as the remaining sections of the act are unconstitutional, leaving only §§ 1 and 2 to be considered.

Notice should also be taken of the fact that § 42 of the act, which, with other sections, the trial court held uncon-

stitutional and void, contains a severability provision to the effect that, if any title, section, and so forth, of the act shall be adjudged invalid, such holding shall not affect, impair or invalidate the remainder of the act, the section concluding as follows:

"It is hereby expressly declared that had any section, subdivision of a section, paragraph, sentence, clause, word or any corporation, association, or class of corporations or associations as to which this act is declared invalid been eliminated from the act at the time the same was considered, the act would have nevertheless been enacted with such portions eliminated."

This section expresses the intent of the legislature that §§ 1 and 2 of the act (the appropriations bill) and §§ 3 to 44, inclusive, were not to be considered interwoven or mutually dependent, one upon the other. The act may be said to contain a subtitle, § 3 thereof reading as follows:

"The remaining sections of this act shall constitute a new chapter under title 82, R.C.W., and shall be headed 'Corporation Excise Tax.'"

The remaining sections of the act being unconstitutional and void, §§ 1 and 2 stand alone and constitute a complete appropriations bill.

Section 45, the last section of the act, reads as follows:

"This act is necessary for the support of the state government. The first two sections hereof shall take effect immediately and the remaining sections shall take effect May 1, 1951."

The foregoing quotation from the act indicates knowledge on the part of the legislature that §§ 1 and 2 of the act, the appropriations bill, were of primary importance and should take effect immediately.

It was necessary that the legislature, in its extraordinary session, pass an appropriations bill, otherwise the state government would have been in grave peril. The legislature would have been required to continue in special session until such a law was enacted. The fact that an unconstitutional tax statute was joined with the appropriations bill

in the same legislative enactment, does not, in my opinion, require that both acts must be declared invalid.

A statute which is void *ab initio* because it is obnoxious to constitutional provisions, is not a "subject," within the constitutional provisions referred to above.

Legislative "logrolling" is certainly a most objectionable practice; but examination of the lengthy record before us satisfies me that §§ 1 and 2 were not the result of any such wrongful practice. If any log was rolled, it was §§ 3 to 44.

I can find no constitutional or other legal reason for holding §§ 1 and 2 of the act void, and, in my opinion, that portion of the act was and is a valid exercise of legislative power.

The act contains a severability clause, *supra*. Sections 3 to 44, inclusive, are and were unconstitutional and void *ab initio* for the reasons stated by the majority. This being true, in my opinion, chapter 10, Laws of 1951, Ex. Ses., embraces only one subject, which is adequately expressed in the title.

I agree with the majority that the orders of the trial court enjoining the enforcement of §§ 3 to 44, inclusive, of the act in question should be affirmed, but I dissent from that portion of the majority opinion which holds that chapter 10, Laws of 1951, Ex. Ses., is unconstitutional in its entirety.

MALLERY, GRADY, and FINLEY, JJ. (dissenting)—The question is whether the corporate franchise excise tax is an *excise tax* or a *property tax*. If it is an *excise tax*, it is valid. If it is a *property tax*, it is not, because the state constitution requires property taxes to be uniform. This tax is not uniform in that it taxes the privilege of exercising a corporate franchise or, in other words, the privilege of doing business as a corporation, but does not tax the privilege of doing business by partnerships and individuals. The existing business and occupation tax is applied to the same privilege and is discriminatory in that it exempts farmers.

This tax merely adds a new levy and a further discrimination to the business and occupation tax. All excise taxes

are discriminatory. No one questions the constitutional power of the legislature to impose discriminatory excise taxes.

The respondents' contention that it a *property tax* is based on the cases involving *net income taxes,* which this court invalidated on the ground that they were *property taxes.* They are not in point. This is not a net income tax.

The act in question provides, *inter alia:*

"Sec. 7. . . . (a) . . . Every bank and corporation . . . for the *privilege of exercising its corporate franchise* . . . shall annually pay . . . an excise tax according to, or measured by, its net income equal to four per cent of such net income . . .

"Sec. 38. . . . (h) The amount of tax payable . . . shall be reduced by a credit equal to fifty per cent of the amount of the business and occupation tax paid . . . " (Italics ours.)

The business and occupation tax, which this court upheld on a challenge to its constitutionality, is based upon *gross income.* The instant tax is computed by a formula based on both *net and gross* income, and hence, is neither a net income tax nor a gross income tax. It is merely a tax computed by reference to them.

The overwhelming weight of authority in the United States holds that a tax on corporate franchises is an *excise.* As such, this act is valid.

The act in question makes appropriations and imposes taxes to meet them, as has been frequently done. Witness the recent soldiers' bonus act, for instance.

The constitution of the state of Washington, Art. VIII, § 4, requires all moneys to be paid out by the treasurer pursuant to appropriation by law. Art. VII, § 5, provides:

"No tax shall be levied except in pursuance of law; and every law imposing a tax *shall state distinctly the object* of the same, to which only it shall be applied." (Italics ours.)

The phrase *"object of the same"* is synonymous with *the purpose for which it is appropriated.*

This act complies with these requirements and cannot be said to be unconstitutional because it does so.