No. 53,276

STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, Attorney General, *Petitioner,* v. JOHN CARLIN, Governor of the State of Kansas, and JACK H. BRIER, Secretary of State of the State of Kansas, *Respondents.*

(631 P.2d 668)

Opinion filed July 17, 1981.

*W. Robert Alderson,* first deputy attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the petitioner.

*John R. Martin,* of Topeka, argued the cause, and *Arthur H. Griggs,* chief attorney for the department of administration, was with him on the brief for respondent Governor Carlin.

*Sherman A. Parks, Jr.,* of Topeka, argued the cause for respondent Secretary of State Brier.

The opinion of the court was delivered by

MILLER, J.: This is an original action in quo warranto and mandamus, brought by the Attorney General against Governor John Carlin and Secretary of State Jack H. Brier. The petitioner challenges the Governor's veto of a portion of Section 77 of 1981 Senate Bill No. 470, the omnibus appropriations bill enacted by the 1981 Kansas Legislature at the close of its recent session, contending that the veto was unlawful and exceeded the Governor's power under Article 2, section 14 of the Kansas Constitution.

The Governor admits that he vetoed a part of the act, but contends that all of Section 77 of 1981 Senate Bill No. 470 is general legislation, wholly foreign to the subject of appropria-

tions, and its inclusion in an appropriation bill violates Article 2, section 16 of the Kansas Constitution and is thus unconstitutional. Alternatively, the Governor contends that if the inclusion of the measure in an appropriation bill was lawful, then it was subject to the line item veto.

Sections 14 and 16 of Article 2 of the Constitution of Kansas, as amended and adopted in 1974, read as follows:

"§ 14. **Approval of bills; vetoes.** (a) Within ten days after passage, every bill shall be signed by the presiding officers and presented to the governor. If the governor approves a bill, he shall sign it. If the governor does not approve a bill, the governor shall veto it by returning the bill, with a veto message of the objections, to the house of origin of the bill. Whenever a veto message is so received, the message shall be entered in the journal and in not more than thirty calendar days (excluding the day received), the house of origin shall reconsider the bill. If two-thirds of the members then elected (or appointed) and qualified shall vote to pass the bill, it shall be sent, with the veto message, to the other house, which shall in not more than thirty calendar days (excluding the day received) also reconsider the bill, and if approved by two-thirds of the members then elected (or appointed) and qualified, it shall become a law, notwithstanding the governor's veto.

"If any bill shall not be returned within ten calendar days (excluding the day presented) after it shall have been presented to the governor, it shall become a law in like manner as if it had been signed by the governor.

"(b) If any bill presented to the governor contains several items of appropriation of money, one or more of such items may be disapproved by the governor while the other portion of the bill is approved by the governor. In case the governor does so disapprove, a veto message of the governor stating the item or items disapproved, and the reasons therefor, shall be appended to the bill at the time it is signed, and the bill shall be returned with the veto message to the house of origin of the bill. Whenever a veto message is so received, the message shall be entered in the journal and, in not more than thirty calendar days, the house of origin shall reconsider the items of the bill which have been disapproved. If two-thirds of the members then elected (or appointed) and qualified shall vote to approve any item disapproved by the governor, the bill, with the veto message, shall be sent to the other house, which shall in not more than thirty calendar days also reconsider each such item so approved by the house of origin, and if approved by two-thirds of all the members then elected (or appointed) and qualified, any such item shall take effect and become a part of the bill.

"§ 16. **Subject and title of bills; amendment or revival of statutes.** No bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes. The subject of each bill shall be expressed in its title. No law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed. The provisions of this section shall be liberally construed to effectuate the acts of the legislature."

1981 Senate Bill No. 470, now Chapter 32 of the 1981 Session Laws, is entitled:

"An Act making and concerning appropriations for the fiscal years ending June 30, 1981, June 30, 1982, and June 30, 1983; authorizing certain transfers and fees, imposing certain restrictions and limitations, and directing or authorizing certain receipts and disbursements, capital improvement projects and acts incidental to the foregoing; amending K.S.A. 72-7045 and 72-7055, section 3 of 1981 House Bill No. 2123, sections 8 and 9 of 1981 Senate Bill No. 77 and sections 2 to 12, inclusive, of 1981 Senate Bill No. 166 and repealing the existing sections."

The bill contains general appropriations for fiscal years ending June 30, 1981, 1982, and 1983 for the operation of some sixty state boards, offices, universities and institutions. The 1981 salaries, wages, and operating expenses of several of these are included within the appropriations in this single piece of legislation. Examples are Section 20, which appropriates some 12 million dollars for Fort Hays State University; Section 22, which appropriates over 58 million dollars for Kansas State University; and Section 64, which appropriates almost 3 million dollars for the Kansas Water Office, formerly the State Water Resources Board. This bill is the final appropriation measure enacted by the 1981 Legislature; it amends some of the earlier appropriation bills, extends or modifies expenditure limitations, authorizes the transfer of moneys from one fund to another, and is the major appropriation bill for all of the state universities.

Section 77, however, has no direct connection with appropriations. The section is lengthy and need not be set forth in full here. It amends K.S.A. 72-7055, being that part of the school district equalization act (K.S.A. 72-7030 to 7066) which limits school district budgets and expenditures for school years commencing after June 30, 1980. The original section contains seven subsections, numbered (a) through (g). The legislature added an eighth, and thus Section 77 contains subsections numbered (a) through (h). Governor Carlin line-item vetoed subsection (b) of Section 77, and various other provisions of Senate Bill No. 470 which are not challenged here, and returned the bill to the Senate with a veto message in which he said in part:

"I have grave concerns about being asked to accept a substantive and potentially harmful change in the School District Equalization Act simply because the Legislature sandwiched the policy change between a host of appropriation matters necessary to the State. The Ways and Means Conference Committee has forced an objectionable idea upon the rest of the Legislature and the Senate by tying it to appropriations that are necessary for the operations of State government, and by doing so in the eleventh hour. In 1974 the citizens of our state

approved a proposition that amended Article 2 of the Kansas Constitution. Prior to that time, our Constitution prohibited the enactment of bills containing more than one subject. This provision was designed to forestall the pernicious practice known as 'logrolling,' whereby

'by joining a number of different subjects in one bill the governor was put under compulsion to accept some enactments that he could not approve, or to defeat the whole, including others that he thought desirable or even necessary. Such bills, popularly called "omnibus bills," became a crying evil, not only from the confusion and distraction of the legislative mind by the jumbling together of incongruous subjects, but still more by the facility they afforded to corrupt combinations of minorities with different interests to force the passage of bills with provisions which could never succeed if they stood on their separate merits. A still more objectionable practice grew up, of putting what is known as a "rider" (that is, a new and unrelated enactment or provision) on the appropriation bills, and thus coercing the executive to approve obnoxious legislation, or bring the wheels of government to a stop for want of funds.' *Commonwealth ex rel. Attorney General v. Barnett,* 48 Atl. 976 at 977 (Penn. 1901).

"I question that the 1974 amendment authorized a revival of this practice. The 1974 revision embraced the work of the Citizens' Committee on Constitutional Revision. The committee's report evidences an intent to clarify that appropriations of money to several state agencies in a single bill is not prohibited. This point is buttressed by the following statement of the Committee's report:

'Section 16. The proposed change in this section is designed to conform to present actual practice relative to bills for appropriations or to codify or revise laws and to not permit challenge of their constitutionality for technical reasons.   .  .' (Page 26 of Report of the Citizens' Committee on Constitutional Revision, 1969).

"Subsection (b) of Section 77 of this bill is a budget limitation on school districts for the next school year and as such provides the legal and express authority from the Legislature for school boards to pay from public monies a specific sum of public money for education purposes. The result of this appropriation is that school districts which in the previous year have budgeted amounts below the median will not be able to adequately improve the quality of education even if the facts in a particular district indicate a dire need to do so.

"If it is argued that Subsection (b) of Section 77 is not an item of appropriation and thus not subject to line item veto, it appears that Section 77 impermissibly injects a second subject in SB 470, a bill which contained only the one subject of 'appropriations' prior to the addition of that section.

"Therefore, I line item veto [Subsection (b)] . . . of Section 77 . . . ."

Section 14 (*a*) of Article 2 authorizes the governor to veto any bill which he does not approve by returning it, with a veto message of the objections, to the house of origin. This provision of the Constitution contemplates the veto of an entire act. A veto of Senate Bill No. 470, however, coming at the close of the regular

legislative session, would have left a large segment of state government without funds for the coming fiscal year.

Section 14 (*b*) of Article 2 provides the only authority for the governor to veto less than an entire legislative act. This subsection authorizes the governor to veto one or more "items of appropriation of money," when a single bill contains several such items. This provision contemplates "a line-item veto"—the veto of one or more parts of an appropriation measure while approving the remainder. For example, under this subsection the governor may, if he chooses, veto the appropriation of a sum of money for a specified purpose while leaving the other provisions of an appropriation bill intact.

Article 2, section 24 of our Constitution states: "No money shall be drawn from the treasury except in pursuance of a *specific appropriation made by law.*" (Emphasis added.) In *State, ex. rel., v. Fadely,* 180 Kan. 652, 661, 308 P.2d 537 (1957), we were called upon to define that phrase. We said:

"The term 'specific appropriation made by law' may be defined as an authority of the legislature, given at the proper time and in legal form to the proper officials, to apply a distinctly specified sum from out of the state treasury, in a given period, for a specified objective or demand against the state. In general terms, a 'specific appropriation made by law' is the act of setting money apart formally or officially for a special use or purpose by the legislature in clear and unequivocal terms in a duly enacted law."

Similarly, "items of appropriation of money," as that phrase is employed in Section 14 (*b*), means the designation of specific sums of money which the legislature authorizes may be spent for specific purposes. Some common examples of "items of appropriation of money" are these. There is appropriated (for a named agency) from the state general fund: For salaries and wages, $500,000; for operating expenditures, $200,000; for the purchase of a site (at a stated location for a certain purpose) $15,000; and for a certain purpose from a certain fund, no limit (the authorized sum being the amount in the described fund).

Turning now to Section 77 of Senate Bill No. 470, it is clear that this section is not an item of appropriation of money. In that section, the legislature did not authorize the spending of a specific sum of money for a specific purpose; it sanctioned no disbursement of money from the public treasury for a certain purpose. The section was not subject to the line item veto authorized by section 14 (*b*) of Article 2 of our Constitution.

Since statehood, section 16 of Article 2 of the Constitution of

this State has read: "No bill shall contain more than one subject . . . ." To that phrase was added in 1974: "[E]xcept appropriation bills and bills for revision or codification of statutes." The question squarely presented here is this: Is the legislature granted authority by the 1974 amendment to include in an appropriations bill, without limitation, any subject which it wishes to address? May it include therein subjects entirely foreign to appropriations? We think not. The Citizens' Committee on Constitutional Revision, in its 1969 report, quoted by the Governor in his veto message, said at p. 26:

"Section 16. The proposed change in this section is designed to conform to present actual practice relative to bills for appropriations . . . ." (Emphasis added.)

The actual practice is evidenced by a review of the appropriation bills enacted by the legislature at the time of and immediately prior to the revision. See, for example, 1969 Laws, Chapters 12 through 46, and 1968 Laws, Chapters 11, 12, 194, 195, 196, 197, 220, 232, 240, 267, 268, 362 and 412. Examination of those chapters discloses no attempt by the legislature to include within those appropriation bills amendments to general legislation, wholly unrelated to the setting apart of state funds and the authorization of the expenditure thereof for specific purposes. The primary content is language appropriating specific sums of money for specific purposes; authorizing the transfer of sums of money from one fund to another; increasing or decreasing expenditure limitations; directing certain state officials to draw warrants; and reappropriating unencumbered balances in certain funds.

A word of caution should be added. We are not here called upon to approve, nor are we here approving, everything included within the 1968 and 1969 appropriation bills. We merely examined them to determine the then current legislative practice, and to determine whether amendments to diverse and unrelated sections of the statutes were customarily and regularly included therein. We find that they were not.

Section 77 of Senate Bill No. 470 does not appropriate state funds; it does not establish expenditure limitations on state funds; it does not authorize the transfer of state moneys from one fund to another. It does fix budget limitations for school districts. It bears no more relationship to the appropriation of state funds

than do statutes fixing the budget limitations of cities, counties, or other taxing districts, or various other statutes which could be cited. Clearly, it adds a second subject to the bill.

In *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 622, 549 P.2d 864 (1976), two years after the amendment of the Constitution, we stated that the purpose of the one subject in a bill requirement of Article 2, section 16, is:

" . . . the prevention of a matter of legislative merit from being tied to an unworthy matter, the prevention of hodge-podge or log-rolling legislation, the prevention of surreptitious legislation, and the lessening of improper influences which may result from intermixing objects of legislation in the same act which have no relation to each other."

We cited this quotation with approval in *State ex rel. Stephan v. Thiessen,* 228 Kan. 136, 142, 612 P.2d 172 (1980). The inclusion of unrelated legislation in an important and extensive appropriations bill, at the end of the session, is particularly illustrative of the possible harm Section 16 is intended to prevent.

Appropriation bills may direct the amounts of money which may be spent, and for what purposes; they may express the legislature's direction as to expenditures; they may transfer funds from one account to another; they may direct that prior unexpended appropriations lapse. But we hold that under section 16 of Article 2 of the Constitution, appropriation bills may not include subjects wholly foreign and unrelated to their primary purpose: authorizing the expenditure of specific sums of money for specific purposes. Section 77 of Senate Bill 470 violates section 16 of Article 2 of the Constitution, and is unconstitutional.

Section 81 of Senate Bill 470 lists various statutes which are repealed by that act. Included as repealed is K.S.A. 72-7055, the section which Section 77 attempts to amend. K.S.A. 72-7055, as originally enacted (see L. 1973, ch. 292, § 26), limited the amount a school district might budget for each school year commencing after June 30, 1973. The statute has been amended each year since 1973, and limitations on school district budgets have been constantly retained. The legislature has thus indicated, through its last eight sessions, its determination to place a limitation upon the budgets which school districts throughout the state may adopt. We conclude that had the legislature anticipated that we would hold Section 77 of Senate Bill No. 470 unconstitutional, it

would not have repealed K.S.A. 72-7055. We note that the repeal of K.S.A. 72-7055 was to become effective upon the effective date of the amendatory act, Section 77, and was thus tied to it. We conclude that K.S.A. 72-7055 remains in full force and effect, and that the statement to the contrary contained in Section 81 of Senate Bill No. 470 is ineffective to accomplish the repeal of that statute. The words "and 72-7055" contained in Section 81 of Senate Bill No. 470 are declared inoperative.

As we noted in the earlier announcement of our decision in this case, relief in the nature of both quo warranto and mandamus is discretionary. Many cases and authorities, in addition to the two cases mentioned in our brief announcement, could be cited; such a recital would but prolong this opinion. We have considered the facts before us and conclude that the issuance of relief in the nature of quo warranto or mandamus would be of no practical benefit and would serve no useful purpose. We have determined the principal issues and have thus resolved this litigation.

For the reasons stated, orders in the nature of mandamus and quo warranto will not be issued.