The Honorable Joann Lee Freeborn State Representative, 107th District Chairman, Special Committee on Environment State Capitol, Room 281-W Topeka, Kansas 66612
Dear Representative Freeborn:
As representative for the 107th District, you ask whether the Cedar Bluff Reservoir Artificial Recharge Pool Operations Agreement (the Agreement) violates a proviso in the 2004 omnibus appropriations bill regarding the Kansas Water Office.
The Agreement states that its purpose is "to effectively manage the water stored in Cedar Bluff Reservoir for artificial recharge under File No. 7,684 for the benefit of all water users in the valley." Signatories to the Agreement are the Kansas Water Office, the Kansas Department of Agriculture through the Division of Water Resources, the City of Hays and the City of Russell.
The responsibilities of the Kansas Water Office pursuant to the Agreement are to "routinely monitor streamflow at the active USGS [United States Geological Survey] gages." Additionally, upon a release trigger being met, if there is water in the artificial recharge pool, the Kansas Water Office is to contact parties to determine if a release from the artificial storage is needed. If a release is needed, the Kansas Water Office is to contact the United States Bureau of Reclamation to request a release and to notify all parties. However, if water is not available, the Kansas Water Office is to notify the City of Russell and the City of Hays. The Agreement does not specify any outlay of funds by the Kansas Water Office in fulfilling its responsibilities under the Agreement.
The proviso at issue, found at L. 2004, ch. 123, § 134(i), states:
 "During the fiscal year ending June 30, 2005, no expenditures shall be made by the Kansas water office
from any moneys appropriated by this or other appropriation act of the 2004 regular session from the state general fund or any special revenue fund for fiscal year 2005 for the release of any water in Cedar Bluff reservoir under the control of the state of Kansas for any environmental, domestic, municipal, industrial or irrigation purposes, except that expenditures may be made by the Kansas water office for the release of such waters from the joint use pool (1) for the purpose of the operations of facilities of the department of wildlife and parks below the dam of the Cedar Bluff reservoir, and (2) to operate Cedar Bluff reservoir in accordance with the Cedar Bluff reservoir operation agreement."
Clearly the Legislature intended that no expenditures be made by the Water Office during the specified fiscal year for the release of water from the Cedar Bluff reservoir, with two limited exceptions. Because the Agreement does not provide for any specific expenditure by the Kansas Water Office[1] in order to fulfill its responsibilities of monitoring, communicating and requesting release of water when warranted, the Agreement does not on its face violate the 2004 omnibus appropriations bill found at L. 2004, ch. 123, § 134(i).
Additionally, if no expenditures are in fact made to effectuate such a release, then the Water Office has not violated the express terms of the proviso, although it may be dangerously close to violating the legislative intent, if that intent was to preclude all releases regardless whether expenditures were made therefore.
If it is the Legislature's intent to prohibit the Water Office from participating in any agreements that may result in a release of water from the reservoir, such language should be placed in a statute rather than an appropriations proviso. Under Article 2, Section 16 of the Kansas Constitution,[2] the Legislature is not granted "carte blanche to include in an appropriation bill measures wholly unrelated and not germane to the subject of the allocation and expenditure of moneys."[3]
The Court has expanded the proper function of an appropriations bill as follows:
 "Appropriation bills may direct the amount of money which may be spent, and for what purposes; they may express the legislature's direction as to expenditures; they may transfer funds from one account to another; they may direct that prior unexpended appropriations lapse. But we hold that under Section 16 of Article 2 of the [Kansas] Constitution, appropriation bills may not include subjects wholly foreign and unrelated to their primary purpose: authorizing the expenditure of specific sums of money for specific purposes."[4]
The Constitutional parameters are equally applicable to a provision of an appropriations bill that expresses direction as to prohibited expenditures.[5] That is, such provision may not address a subject wholly foreign and unrelated to an appropriation of funds.
The Court had previously explained the purpose of this Constitutional provision as:
 "[T]he prevention of a matter of legislative merit from being tied to an unworthy matter, the prevention of hodge-podge or logrolling legislation, the prevention of surreptitious legislation, and the lessening of improper influences which may result from intermixing objects of legislation in the same act which have no relation to each other."[6]
Thus, based on this case law, in our opinion if L. 2004, ch. 123, § 134(i) did directly prohibit the Kansas Water Office from requesting release of water as provided in the Agreement, rather than merely restricting expenditures therefor, such prohibition would run afoul of Article 2, Section 16 of the Kansas Constitution, because such prohibition would not be related to an appropriation.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] Other than for staff time who would be paid the same in the absence of the Agreement.
[2] "No bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes. . . ."
[3] State ex rel. Stephan v. Carlin, 229 Kan. 665, 710 (1981).
[4] State ex rel. Stephan v. Carlin, 230 Kan. 252, 673 (1981).
[5] Manhattan, Bldgs., Inc. v. Hurley, 231 Kan. 20, 31 (1982).
[6] Garten Enterprises, Inc. v. City of Kansas City, 219 Kan. 620, 622
(1976).