IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,135

KANSAS NATIONAL EDUCATION ASSOCIATION,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*


SYLLABUS BY THE COURT


1.

The judicial power granted by the Kansas Constitution is limited to actual cases and controversies.


2.

An association has standing to sue on behalf of its members when: (a) the members have standing to sue individually; (b) the interests the association seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires individual members' participation. To meet the first prong, the association must show that it or one or more of its members suffered actual or threatened injury that must be caused by the complained-of act or omission.


3.

The doctrine of ripeness is designed to prevent courts from becoming entangled in abstract disagreements. To be ripe, issues must have taken shape and be concrete rather than hypothetical or abstract.

4.

Article 2, § 16 of the Kansas Constitution provides "[n]o bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes." This is sometimes known as the one-subject rule, and it exists as a constitutional limitation on the legislature.

5.

A bill is valid under Article 2, § 16 of the Kansas Constitution so long as its provisions are all germane to the subject expressed in the title. A bill will be invalidated only when it embraces two or more dissimilar and discordant subjects that cannot reasonably be considered as having any legitimate connection with or relationship to each other.

6.

The subject of a bill is the matter to which it pertains. A bill's subject can be as comprehensive as the legislature chooses, so long as it constitutes a single subject and not several different ones.

7.

A recognized purpose for the one-subject rule is to prevent a legislative practice known as logrolling in which unrelated matters that might not have enough support on their own are combined into a single bill to entice the necessary votes to secure passage of the whole.

8.

Courts are only concerned with the legislative power to enact statutes, not with the wisdom behind those enactments.

9.

The constitutional provision prohibiting a bill from containing more than one subject will be liberally construed to effectuate acts of the legislature.

10.

Article 2, § 16 of the Kansas Constitution does not forbid combining appropriations and general legislation into a single bill, so long as all provisions of that bill address the same subject.

11.

2014 Senate Substitute for House Bill No. 2506 does not violate the one-subject rule contained in Article 2, § 16 of the Kansas Constitution because all of its provisions relate to the same subject—education.

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed January 20, 2017. Affirmed.

*Jason Walta*, of National Education Association, of Washington, DC, argued the cause, and *Kristen Hollar* and *Lubna Alam*, of the same agency, and *David M. Schauner*, of Kansas National Education Association, of Topeka, were with him on the briefs for appellant.

*Stephen R. McAllister*, solicitor general, argued the cause, and *Jeffrey A. Chanay*, chief deputy attorney general, *M.J. Willoughby*, assistant attorney general, *Cheryl L. Whelan*, assistant attorney general, *Dwight R. Carswell*, assistant solicitor general, *Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: The Kansas Constitution straightforwardly limits legislative authority by providing that "[n]o bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes." See Kan. Const. art. 2, § 16. Known as the one-subject rule, this prohibition has existed since statehood to prevent a form of legislative mischief called "logrolling" in which unrelated matters that might not have enough support on their own are combined to entice the necessary votes to secure passage of the whole. See *Philpin v. McCarty, Supt.,* 24 Kan. 393, 402 (1880) ("Ofttimes a matter of merit and commanding general confidence was yoked to something unworthy, and by this union the latter was carried through on the strength of the former."). In this case, we must decide whether 2014 Senate Substitute for House Bill No. 2506, entitled "[an act] concerning education," violates the one-subject rule.

H.B. 2506 was quickly enacted in response to this court's decision declaring portions of the state's public school finance laws unconstitutional. See *Gannon v. State*, 298 Kan. 1107, 319 P.3d 1196 (2014) (holding State failed to equitably fund public education). H.B. 2506 had a sweeping scope. It cancelled prior appropriations to several varied state agencies, appropriated more than $130,000,000 in general state aid and supplemental state aid to the Department of Education for fiscal years 2014 and 2015, and gave smaller sums to state universities. L. 2014, ch. 93, secs. 6-7. It also made substantive and technical changes to the state's public school financing statutes. See L. 2014, ch. 93, secs. 35-44, 46-47.

Of particular concern in this appeal, the bill amended the Teacher Due Process Act, K.S.A. 72-5436 *et seq*., to remove many elementary and secondary public school teachers from long-standing statutory protections regarding the termination or nonrenewal of their annual employment contracts. See L. 2014, ch. 93, secs. 50, 53.

4

The Kansas National Education Association, a statewide organization of teachers, claims its members have been injured by those revisions and seeks to remedy the injury by attacking the legislation's validity under the one-subject rule. KNEA argues H.B. 2506 violates Article 2, § 16 because it contains both appropriations and substantive general legislation.

We hold that KNEA made allegations sufficient to support its standing to bring this lawsuit and that its claim is ripe. On the merits, we hold that Article 2, § 16 does not forbid combining appropriations and general legislation into a single bill, so long as all provisions of that bill address the same subject. We hold further that H.B. 2506's provisions relate to one subject—education. We affirm the district court, which came to the same conclusions.

FACTUAL AND PROCEDURAL BACKGROUND

According to its pleadings, KNEA is "the state-level affiliate for 361 local education employee organizations, which represent approximately 19,800 current public school teachers in Kansas." Its mission "is to promote quality public schools, strengthen the profession of teaching, and improve the well-being of KNEA members." The association filed this lawsuit shortly after H.B. 2506 became effective, seeking a declaratory judgment that the Teacher Due Process amendments are unenforceable because H.B. 2506 violated the Kansas Constitution's one-subject rule and asking for an injunction "preventing implementing and/or enforcement of the [amendments]." No individual association members are named as parties.

The State promptly moved to dismiss under K.S.A. 2015 Supp. 60-212(b)(1) and (6). It argued the district court lacked subject matter jurisdiction because the lawsuit did not present a case or controversy. Specifically, the State asserted KNEA lacked standing

5

to file suit and that the constitutional claim it was pursuing was not ripe, *i.e.*, premature. The State also argued the association's one-subject rule claim failed on the merits. KNEA filed a competing motion for summary judgment. The district court rejected the State's standing and ripeness challenges but agreed KNEA failed to state a claim as a matter of law because H.B. 2506 did not violate Article 2, § 16. KNEA appealed.

We granted an unopposed motion to transfer the case from the Court of Appeals. See K.S.A. 2015 Supp. 20-3017 (permitting motion to transfer case from Court of Appeals to Supreme Court). Jurisdiction is proper. See K.S.A. 60-2101(b) (providing Supreme Court has jurisdiction over matter transferred under K.S.A. 2015 Supp. 20-3017).

KNEA's challenge requires us to decide: (1) whether KNEA has standing to advance this constitutional challenge on its members' behalf; (2) whether the controversy is ripe for judicial decision on the constitutional question because suit was filed before any school district had applied the revised teacher due process provisions against any KNEA member; and (3) if the first two questions resolve in KNEA's favor, whether H.B. 2506 violates the one-subject rule.

STANDING AND RIPENESS

Judicial power is limited to "actual cases and controversies." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008) ("[D]espite the differences between our Kansas Constitution and the Constitution of the United States, both limit the judicial power to actual cases and controversies."). As elements of a case or controversy, standing and ripeness are components of subject matter jurisdiction. See *Sierra Club v. Moser*, 298 Kan. 22, 29, 310 P.3d 360 (2013) ("[S]tanding is a component of subject matter jurisdiction."); *Sebelius*, 285 Kan. at 896 (noting ripeness as a prerequisite of

6

subject matter jurisdiction). KNEA does not allege injury to itself, but sues instead on its members' behalf, so its standing turns on whether it represents a member who could have brought the suit individually.

The district court denied the State's motion to dismiss on standing and ripeness grounds, but the State did not cross-appeal from those adverse rulings even though it discusses standing and ripeness in its brief. Nevertheless, subject matter jurisdiction can be raised any time, by any party, or by the court on its own motion. See *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015) (standing issue "'may be raised at any time'"); *Sierra Club*, 298 Kan. at 29 ("[A]ny party, or the court on its own motion, may raise [standing] at any time."). Consequently, we will consider the district court's standing and ripeness rulings despite the State's failure to cross-appeal. See *Sebelius*, 285 Kan. at 898.

*Standard of review*

Whether a party has standing to request a declaratory judgment concerning the constitutionality of legislation and whether the issue is ripe are questions of law. See *Solomon v. State*, 303 Kan. 512, 519, 64 P.3d 536 (2015) (reciting standard of review applicable to district court's resolution of standing and ripeness claims in action seeking declaratory judgment that legislation violated separation of powers under state constitution); *Sierra Club*, 298 Kan. at 29 ("The issue of whether a party has standing in a judicial action, like other jurisdictional issues, presents a question of law.").

*Additional background*

Before July 1, 2014, state law had long provided what was commonly termed a "Due Process Procedure" for "tenured" teachers, *i.e.*, those who had "completed not less

7

than three consecutive years of employment, and been offered a fourth contract . . . ." K.S.A. 2013 Supp. 72-5445(a)(1). A "teacher" was defined as "any professional employee who is required to hold a certificate to teach in any school district, and any teacher or instructor in any area vocational-technical school or community college." K.S.A. 2013 Supp. 72-5436(a). Among the protections conferred on qualifying teachers was the right to notice, including "[a] statement of the reasons for the proposed nonrenewal or termination . . . and . . . a statement that the teacher may have the matter heard by a hearing officer upon written request . . . ." K.S.A. 2013 Supp. 72-5438(a).

Upon invoking the right to a hearing, a qualifying teacher had corresponding rights to: (1) participate in selecting the hearing officer; (2) have an attorney present at the hearing, as well as testify and cross-examine witnesses; (3) obtain a written opinion containing the hearing officer's findings of fact and determination of the issues; and (4) appeal the decision to district court. See K.S.A. 2013 Supp. 72-5438(b)-(d); K.S.A. 2013 Supp. 72-5439; K.S.A. 2013 Supp. 72-5443. Kansas courts had held this statutory scheme precluded a school district from terminating or nonrenewing a "tenured" teacher absent good cause, even though the statutory provisions themselves did not expressly require it. *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 78, 605 P.2d 105 (1980).

The *Gillett* court viewed good cause as an inherent requirement in the statutory scheme and held courts in this jurisdiction "must require a board of education to show good cause" to justify a tenured teacher's dismissal or nonrenewal in order to "carry out the legislative purpose of the teacher tenure statutes . . . ." 227 Kan. at 76. That purpose, the court said was

"'to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind political, religious or personal, and secure for them teaching conditions which will encourage their growth in the full practice of

8

their profession, unharried by constant pressure and fear, but it does not confer special privileges or immunities upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system; and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers Boards of Education to discharge them for Just cause in an orderly manner by the procedures specified.'" 227 Kan. at 76 (quoting *Million v. Board of Education*, 181 Kan. 230, Syl. ¶ 1, 310 P.2d 917 [1957]).

H.B. 2506 changed this by redefining and limiting the term "teacher" to mean "any teacher or instructor in any technical college, the institute of technology at Washburn university or community college." K.S.A. 2015 Supp. 72-5436(a). By doing so, the legislature purported to exclude primary and secondary educators from the statutory due process protections formerly available to them. Because of this, KNEA alleged in its petition that it had

"standing to sue on behalf of its members, many of whom are non-probationary teachers who have lost valuable rights due to the passage of the Teacher Dismissal Provisions. The relief KNEA seeks would redress that harm, the claims advanced in this case are consistent with KNEA's mission, and the participation of individual members is not required to resolve those claims."

In its motion to dismiss, the State argued KNEA lacked standing on its own because it did not allege it was injured by the legislation and failed to set out factual allegations demonstrating its individual members had standing. In particular, the State argued the injury claimed in KNEA's petition was too vague and conclusory. The State further asserted KNEA's challenge was not ripe because no person had yet been injured by the statute and might never be.

9

KNEA countered with a motion for summary judgment that included a 24-paragraph factual statement focusing entirely on the legislative process that led to H.B. 2506's passage. But it did not set out facts or attach affidavits, depositions, or other materials to demonstrate any injury to itself or its members flowing from H.B. 2506's enactment.

In addressing standing, the district court disagreed with the State's contention that KNEA's lawsuit raised only a generalized grievance. The court reasoned KNEA did not claim the alleged injury affected only the public at large; instead, KNEA argued an injury arising from the challenged statutory revisions, by which school district teachers, not the general public, would be specifically affected. The court then analyzed whether KNEA alleged an injury together with ripeness. In ruling KNEA had standing, the district court concluded pre-H.B. 2506 procedural protections "were substantial employment benefits in much the same way that the tenure process can be said to be an employment benefit." Further, the court held:

> "To the extent that school district teachers had once been included within the procedural protections found in the previous versions of these statutes, then, they can be said to have now *lost* those same protections as a direct result of HB 2506. No teacher has apparently yet been fired under the new version of these statutes, no dismissal notice yet sent out. Yet the loss to the school district teachers is the same either way. And in that loss—the loss of procedure, different from tenure only in scope—there is a concrete, actualized injury in fact."

From this perspective, the district court concluded KNEA's claim was ripe when H.B. 2506 became law.

10

*Standing*

"'Standing is "a party's right to make a legal claim or seek judicial enforcement of a duty or right." [Citation omitted.]'" *Gannon*, 298 Kan. at 1121 (quoting *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 324, 255 P.3d 1186 [2011]). The burden to establish standing is on the party asserting it. The contours of this burden depend on the stage of the proceedings at which standing is examined. 298 Kan. at 1123. "[T]he elements of standing are not merely pleading requirements. Each element must be proved in the same way as any other matter and with the degree of evidence required at the successive stages of the litigation." 298 Kan. at 1123.

The district court assessed KNEA's standing at the motion to dismiss stage. To possess standing, a party "must have a 'sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy.'" 298 Kan. at 1122 (quoting *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 [1996]); see *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 678 (as jurisdictional matter, standing requires court to decide if party alleged sufficient personal stake in controversy's outcome to invoke jurisdiction and justify exercising remedial powers on party's behalf). Generally, this requires demonstrating the party suffered a cognizable injury and that there is a causal connection between that injury and the challenged conduct. *Gannon*, 298 Kan. at 1123.

> "For an association to have standing, additional requirements are imposed and a three-prong test must be satisfied: 'An association has standing to sue on behalf of its members when (1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires participation of individual members.'" *Sierra Club*, 298 Kan. at 33 (quoting *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, Syl. ¶ 2, 996 P.2d 821 [2000]).

11

On appeal, the parties focus on the first prong—whether KNEA adequately alleged individual-member standing. To satisfy this prong, an association like KNEA must show "one of its members has suffered actual or threatened injury—*i.e.*, the association or one of its members must have suffered cognizable injury or have been threatened with an impending, probable injury and the injury or threatened injury must be caused by the complained-of act or omission." 298 Kan. at 33. To prove a cognizable injury, "'a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct.'" *Gannon*, 298 Kan. at 1123 (quoting *Sierra Club*, 298 Kan. at 33).

Since standing was determined on a motion to dismiss without an evidentiary hearing, the district court was required to resolve any factual disputes in KNEA's favor, and KNEA needed only to make a prima facie showing of jurisdiction. See *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1122, 307 P.3d 1255 (2013). In this appeal, our inquiry is limited to whether the allegations in the petition support KNEA's standing. See *Board of Summer County Comm'rs v. Bremby*, 286 Kan. 745, 751, 189 P.3d 494 (2008).

Based on the pleadings, a cognizable injury can be inferred from the allegation that KNEA members lost "valuable rights" as a result of the statutory amendment. *Cf. Solomon*, 303 Kan. at 520 (holding Chief Judge of judicial district had standing to challenge statute prospectively altering chief judge selection procedure when judge alleged in declaratory judgment petition that the legislation "directly affected" his "status and other legal relations"); *State Association of Chiropractors v. Anderson*, 186 Kan. 130, 134-35, 348 P.2d 1042 (1960) (holding professional chiropractic association's licensed members could challenge acts authorizing nonchiropractors to conduct chiropractic licensure examinations because licensed members were "vitally affected" by

12

the statutes, noting potential penalty for licensed members' failure to comply with post-licensure education requirements under the acts).

It was not necessary to wait until a local school district took action against a teacher's contract because it can also be inferred that at least one KNEA member's employment is controlled by the statutes rather than a negotiated agreement with a school district. H.B. 2506 purported to permit the termination of KNEA members' annual contracts without cause and without an opportunity to be heard—incidents of their employment that statutorily existed immediately before H.B. 2506 became effective. Given that KNEA's burden at this stage was simply to make a prima facie showing, the district court correctly concluded the necessary standing elements had been met.

*Ripeness*

As with the State's standing challenge, we address the State's argument that KNEA's claim is not ripe despite the district court's ruling to the contrary because ripeness, like standing, is an element of subject matter jurisdiction. See *Sierra Club*, 298 Kan. at 29; *Sebelius*, 285 Kan. at 896. The ripeness requirement is designed to prevent courts from becoming entangled in abstract disagreements. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 170, 210 P.3d 105 (2009). It prevents courts from being asked to decide ill-defined controversies over constitutional issues or hypothetical or abstract cases. To be ripe, an issue must have taken shape and must be concrete. *Sebelius*, 285 Kan. at 892. A claim is ripe when "no additional facts need to arise or be developed in the record . . . ." *Solomon*, 303 Kan. at 522.

The one-subject rule violation KNEA asserts is a pure question of law. See *Kansas One-Call System v. State*, 294 Kan. 220, 225, 274 P.3d 625 (2012). No additional facts need to arise or be developed for the court to resolve it. Since the challenged legislation

13

has become effective and KNEA has alleged standing sufficient to survive the State's motion to dismiss, we hold KNEA's claim is ripe.

We turn now to the merits of this appeal to consider whether H.B. 2506 violates the one-subject rule of Article 2, § 16 of the Kansas Constitution.

## ONE-SUBJECT RULE

KNEA's one-subject rule attack specifically goes to whether H.B. 2506 may contain both appropriations and general legislation. KNEA does not assert the legislation's various provisions drift far beyond the broader topic of education, except to assert the appropriations provisions for various state agencies do not "on their face mention or relate to education in any way." In other words, KNEA's focus is on the appropriations vs. general legislation dichotomy.

KNEA draws strength for its challenge from this court's statement in *State ex rel. Stephan v. Carlin*, 230 Kan. 252, 258, 631 P.2d 668 (1981), that "under Section 16 of Article 2 of the Constitution, appropriation bills may not include subjects wholly foreign and unrelated to their primary purpose:  authorizing the expenditure of specific sums of money for specific purposes." But the facts in *Carlin* greatly diminish its value to KNEA's argument and give its holding a much narrower context.

*Standard of review*

Whether a bill violates Article 2, § 16 is a question of law subject to unlimited review. See *Kansas One-Call*, 294 Kan. at 225 (applying de novo standard of review to one-subject rule claim based on rule that determining statute's constitutionality is a question of law).

14

"Courts are only concerned with the legislative power to enact statutes, not with the wisdom behind those enactments." *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 348, 789 P.2d 541 (1990). Article 2, § 16 commands us that "[t]he provisions of this section shall be liberally construed to effectuate the acts of the legislature." See *Kansas One-Call*, 294 Kan. at 226-29 (relying on liberal construction provision in resolving one-subject issue). This constitutional directive dovetails with the separation of powers doctrine and long-recognized in our caselaw that we presume a statute to be constitutional, resolve all doubts in favor of a statute's validity, and require that a statute must clearly violate the constitution before it may be struck down. See *Miller v. Johnson*, 295 Kan. 636, Syl. ¶ 1, 289 P.3d 1098 (2012); *Sebelius*, 285 Kan. at 883.

*Additional background*

H.B. 2506 is entitled:

"An Act concerning education; relating to the financing and instruction thereof; making and concerning appropriations for the fiscal years ending June 30, 2014, and June 30, 2015, for certain agencies; authorizing the state board of regents to sell and convey or exchange certain real estate with the Emporia state university foundation; authorizing the state board of regents to exchange and convey certain real estate with the Kansas university endowment association; amending K.S.A. 72-1412, 72-5333b, 72-5439, 72-5446, 72-6416 and 72-8809 and K.S.A. 2013 Supp. 72-1127, 72-1925, 72-5436, 72-5437, 72-5438, 72-5445, 72-6407, 72-6410, 72-6415b, 72-6417, 72-6431, 72-6433, 72-6433d, 72-6441, 72-8254, 72-8814 and 79-32,138 and repealing the existing sections; also repealing K.S.A. 2013 Supp. 72-6454." L. 2014, ch. 93.

The bill contains 68 sections, with approximately one-third of them relating to appropriations. Some of those lapsed portions of prior appropriations for fiscal years 2014 and 2015 or ordered money transferred from specified agency funds into the state general fund. These provisions applied to several agencies, including the Department of Administration, Department for Aging and Disability Services, Department for Children and Families, Department of Education, Kansas State University Veterinary Medical Center, Wichita State University, Fire Marshal, Highway Patrol, and Department of Transportation. See L. 2014, ch. 93, secs. 2-7, 13, 22, 25-27. The amounts deemed lapsed or directed to be transferred into the general fund from those of these agencies that are seemingly unrelated to education exceeded $42,000,000 over fiscal years 2014 and 2015.

While taking previously appropriated money away from these various agencies, H.B. 2506 gave money to education related entities—specifically the Department of Education, state universities, and the Board of Regents. See L. 2014, ch. 93, secs. 6-24. Among the appropriations to the Department of Education was a combined $29,558,567 in general state aid for fiscal years 2014 and 2015 and $109,265,000 in supplemental general state aid for fiscal year 2015. L. 2014, ch. 93, secs. 6-7.

The university appropriations were mostly for "[o]perating expenditures." L. 2014, ch. 93, secs. 8-12, 14-22. Many included authorization or direction to spend money for specified purposes:  capital improvement projects, research, official hospitality, and equipment and training. See L. 2014, ch. 93, secs. 8, 10, 14-15, 18, 20, 22. They also included money for Kansas State University's extension systems and agricultural research programs for cooperative extension service and agricultural experiment stations, and for the University of Kansas Medical Center for "rural health bridging" and the Midwest Stem Cell Therapy Center. L. 2014, ch. 93, secs. 11-12, 20.

The Board of Regents appropriations included "Tuition for technical education" and "Municipal university operating grant" for fiscal years 2014 and 2015; all money in the "Temporary assistance for needy families federal fund" and "Workforce data quality initiative" special revenue funds for fiscal years 2014 and 2015; "Postsecondary tiered technical education state aid" and "Non-tiered course credit hour grant" for fiscal year 2015; and a specific amount from the special revenue fund "postsecondary education performance-based initiatives fund" for fiscal year 2015. L. 2014, ch. 93, secs. 23-24. The legislature also granted authority to convey specified land tracts on behalf of Emporia State University and the University of Kansas. L. 2014, ch. 93, secs. 33, 64.

In addition to the teacher due process provisions KNEA loathes, the substantive portions of H.B. 2506 touched on several other areas, most particularly on changes to the state's school financing scheme. See L. 2014, ch. 93, secs. 35-44, 46-47. In addition, the bill created a commission to study kindergarten through twelfth grade student performance and school districts' fiscal efficiency. See L. 2014, ch. 93, sec. 29. It also provided a procedure through which a person who has not had "professional education pedagogy coursework . . . in teacher education" may obtain a license to teach at the high school level and established limitations on the license. L. 2014, ch. 93, sec. 30.

The bill further required school districts to notify their teachers about protections afforded to them under the Kansas Tort Claims Act. L. 2014, ch. 93, sec. 31. It amended K.S.A. 2013 Supp. 72-1127, which enumerates the minimum capacities the State Board of Education must aim to instill in schoolchildren when designing subjects and areas of instruction. L. 2014, ch. 93, sec. 32. It expanded the number of school districts permitted to operate as "public innovative districts." L. 2014, ch. 93, sec. 34. It created a tax credit for businesses that contribute to organizations providing scholarships to low income students. L. 2014, ch. 93, secs. 55-62. And it established performance-based incentives

17

for GED and career education matriculation and enrollment at state universities. L. 2014, ch. 93, sec. 63.

The district court ruled H.B. 2506 did not violate the one-subject rule "because the appropriations provisions in HB 2506 are clearly reasonably related to the non-appropriations provisions in subject matter—education, specifically in response to *Gannon . . . .*" The district court, therefore, granted the State's motion to dismiss because KNEA's "claim under the single subject rule of Article 2, § 16 of the Kansas Constitution must fail as a matter of law." The parties clash over this ruling.

*Discussion*

In Kansas, our constitution states:

> "No bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes. The subject of each bill shall be expressed in its title. No law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed. The provisions of this section shall be liberally construed to effectuate the acts of the legislature." Kan. Const. art. 2, § 16.

"The subject of the bill is the matter to which the legislation pertains." *State, ex rel., v. Shanahan*, 178 Kan. 400, 404, 286 P.2d 742 (1955). An act is invalid when it "'embraces two or more dissimilar and discordant subjects that cannot reasonably be considered as having any legitimate connection with or relationship to each other.'" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 676, 941 P.2d 1321 (1997) (quoting *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 671, 831 P.2d 958 [1992]). But an act is valid if its provisions "'are all germane to the subject expressed in the title.'" *KPERS*, 262 Kan. at 676.

The "subject can be as comprehensive as the legislature chooses, as long as it constitutes a single subject and not several different ones." *Kansas One-Call*, 294 Kan. at 227. The subject

"'may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and, if the title to the bill containing this grand and comprehensive subject is also comprehensive enough to include all these minor subjects as one subject, the bill, and all parts thereof, will be valid.'" *Shanahan*, 178 Kan. at 403 (quoting *Division of Howard Co.*, 15 Kan. 194, Syl. ¶ 4 [1875]).

One of our earliest one-subject rule cases explained:

"'No bill shall contain more than one *subject*, which shall be clearly expressed in its title;' but this subject may be broad and comprehensive, or it may be narrow and limited. It may embrace the entire common law of England, with all the English statutes of a general nature down to the fourth year of the reign of James the First, (Comp. Laws, 678,) or it may embrace only the change of the name of some private and obscure individual.

"Suppose the legislature should pass an act entitled, 'An act to establish a code of laws;' would not the subject expressed in such a title be comprehensive enough to include every general law found within our statute-books? And can there be any doubt that the legislature would have power to do just such a thing? Probably no sane person will contend that the subject must be the narrowest possible subject that can be conceived; that it must be so narrow and limited that it cannot possibly be again divided or subdivided into narrower and smaller subjects. If such is the meaning of the constitution, almost every act that the legislature has ever passed has been in contravention of the constitution. While it is admitted that there must be but one subject in the title of a bill, and that that subject must be clearly expressed, yet we think it must always be left entirely within the discretion of the legislature to say how comprehensive and general, or

19

how narrow and limited that subject shall be. This we think is the true construction of the constitution. [Citations omitted.]" *Bowman, et al., v. Cockrill*, 6 Kan. 311, 334-35 (1870).

But why does this constitutional limitation on the legislature's ability to enact legislation matter? This court has articulated that its purposes:

"'[I]nclude the prevention of a matter of legislative merit from being tied to an unworthy matter, the prevention of hodge-podge or log-rolling legislation, the prevention of surreptitious legislation, and the lessening of improper influences which may result from intermixing objects of legislation in the same act which have no relation to each other.' *Garden Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 622, 549 P.2d 864 (1976)." *U.S.D. No. 229 v. State*, 256 Kan. 232, 268, 885 P.2d 1170 (1994).

(1) *Can a bill mix appropriations with general legislation?*

KNEA argues H.B. 2506 violates Article 2, § 16 because it contains both appropriations and general legislation. KNEA relies entirely on *Carlin*, 230 Kan. 252, so we consider it in more detail.

In *Carlin*, the court invalidated a substantive amendment to the school district budget law that was inserted into an omnibus appropriations bill that funded about 60 state boards, offices, universities, and institutions for fiscal years from 1981 to 1983. This single piece of legislation was the final appropriation measure enacted by the 1981 legislature. The problem was section 77, which amended part of the then-existing school finance laws to limit school district budgets and expenditures for the upcoming school year.

The focal point in *Carlin* was the 1974 amendment to Article 2, § 16, which added to the section the language exempting appropriations bills from the one-subject rule. The

question as framed by the *Carlin* court was whether the constitutional amendment permitted the legislature to "include in an appropriations bill, without limitation, any subject which it wishes to address? May it include therein subjects entirely foreign to appropriations?" 230 Kan. at 257. The court held it did not and the legislature could not. 230 Kan. at 258. It offered three justifications.

First, the constitutional amendment was designed to conform to then-current practices, and the court had found no bill passed during the two legislative sessions immediately preceding the recommendation to amend the constitution that included both appropriations and substantive provisions. 230 Kan. at 257. The court further cautioned it was not approving the bills it reviewed, explaining: "We merely examined them to determine the then current legislative practice, and to determine whether amendments to *diverse and unrelated sections of the statutes* were customarily and regularly included therein." (Emphasis added.) 230 Kan. at 257.

Second, the challenged provision did not appropriate funds, establish expenditure limitations on state funds, or authorize the transfer of money from one fund to another. Therefore, the court concluded that the provision bore "no more relationship to the appropriation of state funds than do statutes fixing the budget limitations of cities, counties, or other taxing districts, or various other statutes which could be cited. Clearly, it adds a second subject to the bill." 230 Kan. at 257-58.

Third, the *Carlin* court recited Article 2, § 16's purposes and concluded "[t]he inclusion of unrelated legislation in an important and extensive appropriations bill, at the end of the session, is particularly illustrative of the possible harm Section 16 is intended to prevent." 230 Kan. at 258. The court said:

"Appropriation bills may direct the amounts of money which may be spent, and for what purposes; they may express the legislature's direction as to expenditures; they may transfer funds from one account to another; they may direct that prior unexpended appropriations lapse. *But we hold that under Section 16 of Article 2 of the Constitution, appropriation bills may not include subjects wholly foreign and unrelated to their primary purpose: authorizing the expenditure of specific sums of money for specific purposes.* [The challenged provision] violates Section 16 of Article 2 of the Constitution, and is unconstitutional." (Emphasis added.) 230 Kan. at 258.

The *Carlin* court's language seemingly supports KNEA's position, but the State argues *Carlin* is limited by its facts to omnibus appropriations bills, which necessarily include various appropriations for a variety of many unrelated entities and purposes. This, the State contends, makes an omnibus appropriations bill distinguishable from H.B. 2506. The State further argues the 1974 amendment's purpose as construed in *Carlin* was to conform to the legislature's then-existing practice of appropriating money for various purposes in a single bill at the end of a legislative session, and that Article 2, § 16 on its face does not prohibit mixing both substantive general legislation with appropriations in a single bill, so long as all the bill's provisions relate to a single subject. We agree.

To begin with, Article 2, § 16 does not expressly forbid including appropriations and general legislation together in a single bill. It simply states no bill shall contain more than one subject. It then provides two exceptions: one for "appropriation bills" and the other for "bills for revision or codification of statutes." Absent defining language, our constitution is deemed to mean what the words imply to a person's common understanding. See *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015). In this instance, the absence of any limitation on the commingling of appropriations and general legislation has meaning.

We note the inclusion of both substantive general legislation and its funding methods in a single bill has not previously presented a one-subject rule violation. In *U.S.D. No. 229*, the court upheld against a one-subject rule challenge an act making sweeping changes to our school finance laws, school district performance standards, the income tax, and the retail sales tax. The challenged legislation did not contain appropriations, but it did earmark the increased revenue generated by the tax provisions to state aid for public schools. When the legislation was attacked under the one-subject rule, the court held the bill's provisions were related to a single subject—public education. 256 Kan. at 270 ("[T]he Act does not embrace two or more dissimilar and discordant subjects that cannot reasonably be considered as having any legitimate connection with or relationship to each other."). In so holding, the court explained:

"Everything in the Act relates to public education. The Act is a package which increased state funding and school district accountability, changed the basic policy underlying the funding of public schools, and made a variety of other public school law changes. The package was complete—the changes were set forth, and the means to raise sufficient revenue to fund the changes were included. Rather than separating the package into various components, it was presented as a package. There is certainly nothing inherently wrong in tying expenditures and the means of raising the extra revenue together in order that members of the legislature may see where revenue will come from before they vote on its expenditure." 256 Kan. at 269.

Caselaw from other jurisdictions also suggests a bill does not necessarily address multiple subjects merely because it contains both general legislation and appropriations. See *Arkansas Motor Carriers Ass'n, Inc. v. Pritchett*, 303 Ark. 620, 626, 798 S.W.2d 918 (1990) (legislation appropriating money to agency and making substantive changes to that agency's powers and duties related to a single subject—the agency's operation); *Merrill v. State*, 65 Neb. 509, 91 N.W. 418, 420 (1902) (act including food-safety legislation, creating food commissioner, and making appropriations for commissioner's

23

salary contained single subject—substantive provisions were the chief legislation and appropriations were the means to carry it into effect); *State ex rel. Dix v. Celeste*, 11 Ohio St. 3d 141, 146, 464 N.E.2d 153 (1984) (bill abolishing state agency, transferring its duties to another, and making appropriations to new agency did not contain more than one subject because appropriations were means to carry out substantive provisions); *Fent v. State ex rel. Office of State Finance*, 184 P.3d 467, 476 (Okla. 2008) (constitutional provision requiring special appropriations bills to address single subject permits mixing appropriations and substantive legislation, but all provisions must be closely related to the bill's subject); *Gregory v. Shurtleff*, 299 P.3d 1098, 1114-15 (Utah 2013) (declining a per se rule that appropriations cannot mix with substantive legislation under single-subject rule); *State v. Acevedo*, 78 Wash. App. 886, 891, 899 P.2d 31 (1995) (holding appropriations and substantive legislation may be in the same bill so long as one-subject rule satisfied).

We further note one commonly cited secondary legal source concerning the one-subject rule carries a similar view. "There seems to be no serious contention that an appropriation is in itself a second subject; therefore, an act may, for example, establish an agency, set out the regulatory program, and make an appropriation for the agency without violating the one-subject rule." Ruud, *No Law Shall Embrace More Than One Subject*, 42 Minn. L. Rev. 389, 441 (1958). Indeed, the author's research supported the State's distinction between the omnibus appropriation bill in *Carlin* and H.B. 2506: "[A]n act other than a general appropriation act may make an appropriation without being limited merely to appropriating." 42 Minn. L. Rev. at 428.

Finally, KNEA urges us to consider *Cashin v. State Highway Comm.*, 137 Kan. 744, 22 P.2d 939 (1933), *Heinz v. Larimer*, 119 Kan. 861, 241 P. 241 (1925), and *Reilly v. Knapp*, 105 Kan. 565, 185 P. 47 (1919), all of which it cites for the proposition that "the Kansas Supreme Court has held categorically that '[m]atters which do not concern

the appropriation of money cannot be included in an appropriation act.'" But contrary to that assertion, *Cashin* is distinct and does not support KNEA's position. It involved whether two substantive items in a single piece of legislation addressed the same subject. *Heinz* and *Reilly* both addressed the combination of substantive legislation and appropriations, but like *Carlin*, the legislature in those cases had included substantive provisions in bills "making appropriations for the executive and judicial departments of the state." *Heinz*, 119 Kan. at 242; *Reilly*, 105 Kan. at 567. These authorities do no more than raise the question now before us: Is a bill an "appropriation act" merely because it contains appropriations of any sort? And for the reasons we have discussed, we believe the answer to the question raised by these cases is "no."

Because we are constitutionally directed to construe Article 2, § 16 liberally, and in light of the referenced caselaw and authority, we hold a single bill may contain both appropriations and general legislation so long as those provisions address a single subject. We consider next that question as it concerns H.B. 2506.

(2) *Does H.B. 2506 contain more than one subject?*

This court's most recent one-subject rule case, *Kansas One-Call System v. State*, illustrates the breadth of subject matter the legislature may permissibly address in a single bill while still complying with the one-subject rule. In that case, the challenged legislation was entitled simply "[an act] concerning utilities . . . ." 294 Kan. 220, 226, 274 P.3d 625 (2012). It contained provisions deregulating certain telecommunications services rates; addressed telecommunications carrier participation in programs for low income customers and universal service providers; authorized the Citizens Utility Ratepayer Board to contract for professional services; regulated utility company membership in the "One-Call" program, which is a notification center that alerts utilities about planned excavations to prevent damage to underground facilities; and imposed

25

public accountability requirements on the "One-Call" notification center by deeming it a public agency subject to the Kansas Open Records Act and Kansas Open Meetings Act. See L. 2008, ch. 122.

An entity operating the notification center challenged the accountability requirements by arguing the act contained more than one subject. The court held the act complied with Article 2, § 16 because the bill's "multiple and diverse subjects are related and germane to one another under the all-encompassing category of utilities." 294 Kan. at 228. In particular, the public records and open meetings requirements related to "utilities" because the notification center was "under the purview" of the Kansas Underground Utility Damage Prevention Act. That act, in turn, related to utilities through its work to protect underground utility infrastructure. 294 Kan. at 228. And in refusing to find a one-subject rule violation, the court emphasized the underlying policy of liberally construing the one-subject rule and noted "a statute is legitimate under [the rule] unless 'invalidity is manifest.'" 294 Kan. at 229.

H.B. 2506 is entitled "[an act] concerning education[.]" Like the bill examined in *Kansas One-Call*, all substantive provisions in H.B. 2506 are connected to this broad topic. The provisions regulating teacher due process and school financing relate to public schools; the low income student tax credit and the GED incentive program relate to students; and the provisions permitting the transfer of lands on behalf of state universities relate to state universities. At the same time, the term "education" is not so broad that it fails to limit the area in which the legislation may operate. *Cf. The State v. Sholl*, 58 Kan. 507, 508, 49 P. 668 (1897) (title simply stated: "'An act to repeal or strike out certain redundant, obsolete, and inoperative provisions of the General Statutes of 1889'").

As KNEA points out, some of H.B. 2506's appropriations provisions clearly touch many governmental agencies. But these provisions nonetheless are germane to education

in the context of H.B. 2506. Our previous cases finding one-subject rule violations in the mixture of substantive legislation and appropriations provisions have involved general appropriations bills. See *State ex. rel. Stephan v. Carlin*, 230 Kan. 252, 258, 631 P.2d 668 (1981) (provision regulating school district budgets addressed in omnibus appropriations bill); *Heinz*, 119 Kan. at 862 (provision requiring fees collected from prohibition and gambling enforcement to be remitted to country treasury contained in "the general appropriation act for the executive and judicial departments of the state government"); *Reilly*, 105 Kan. at 566 (provision on qualifications for state employment contained in act "making appropriations for the executive and judicial departments"); *The State, ex rel., v. Dawson*, 90 Kan. 839, 840, 136 P. 320 (1913) (provision addressing requirement that state officers remit fees they collected to state treasurer contained in "the appropriation act of 1911"). H.B. 2506 is distinguishable.

H.B. 2506 did not appropriate funding for an array of disparate executive branch agencies. It made funds previously committed to those agencies available for another use, *i.e.*, education. H.B. 2506 may have taken approximately $42,000,000 from agencies that would have used the funds for noneducation purposes, but it appropriated those funds and more to institutions for education-related uses, including more than $130,000,000 in state aid to public schools.

In *U.S.D. No. 229*, the court held the provisions of a bill that made general amendments to the income and retail sales tax were all related to the subject of education because of the earmarked purpose for those revenues. See 256 Kan. at 269 ("The package was complete—the changes were set forth, and the means to raise sufficient revenue to fund the changes were included."). Similarly, it is apparent from H.B. 2506's content that noneducation appropriations provisions freed previously-committed funds to pave the way for the education-related appropriations. Applying the lessons taught by *Kansas*

27

*One-Call* and *U.S.D. No. 229*, we conclude H.B. 2506's provisions all relate to "education."

KNEA decries the adverse impact it alleges results to its members and public education in general by H.B. 2506's tampering with the Teacher Due Process Act. But the wisdom of the public policy choices reflected in any individual part of a bill is irrelevant to whether the legislation as a whole contains more than one subject. In this instance, H.B. 2506 does not "'embrace[] two or more dissimilar and discordant subjects that cannot reasonably be considered as having any legitimate connection with or relationship to each other.'" *KPERS*, 262 Kan. at 676. Therefore, H.B. 2506 does not violate Article 2, § 16.

Affirmed.